JOHN MEDEIROS & others vs. BOARD OF ELECTION
COMMISSIONERS OF FALL RIVER & another.[1]

Bristol.   January 9, 1975. — April 2, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Municipal Corporations,* Charter, "Home Rule," Mayor.   *Statute,*
Construction.   *Fall River.*

G. L. c. 43, § 17C, which provides that it shall apply "only in cities
which have adopted Plan A, Plan B or Plan F under this chapter
and in cities which have, under the provisions of any special act or
any [home rule] charter . . ., a mayor" as defined in c. 43B,
§ 10 (a), applies to a city which has such a mayor either by the
adoption of one of the plans or by special act or home rule
charter; there was no merit in a contention that § 17C is not
applicable unless the city has such a mayor both under an adopted
plan and pursuant to a special act or home rule charter.   [289-290]
G. L. c. 43, § 17D, which provides a referendum procedure for
reducing a mayor's term of office from four to two years, applied
to a city which had increased the mayor's term of office from two
to four years, not under § 17C, but pursuant to a special act of
the Legislature at a time, prior to the adoption of the Home Rule
Amendment, art. 89 of the Amendments of the Massachusetts
Constitution, and the enactment of G. L. c. 43B, when there was
no mechanism other than a special act available to vary the two
year mayoral term.   [290-292]

BILL IN EQUITY filed in the Superior Court on July 16,
1973.

The suit was heard by *Zarrow,* J.

After review was sought in the Appeals Court, the
Supreme Judicial Court, on its own initiative, ordered
direct appellate review.

---

[1] City of Fall River.

*Daniel A. Sullivan,* Corporation Counsel (*Lloyd E. Belford,* Assistant Corporation Counsel, with him) for the defendants.

*George T. Bolger* (*Karl Vrana* with him) for the plaintiffs.

REARDON, J. This is an appeal from a final decree entered in the Superior Court on October 18, 1973. The plaintiffs, all residents and registered voters in the city of Fall River, brought a bill for declaratory relief against the board of election commissioners of Fall River (board) seeking a declaration that their petition under G. L. c. 43, § 17D, was valid and, accordingly, requesting the court to order the board to place on the ballot for the November, 1973, municipal election the question, "Shall the term of office of the mayor of the City of Fall River be two years?" The decree of the Superior Court granted the relief requested.

Fall River has a Plan A form of government but departs from the provisions of G. L. c. 43, §§ 46-55, with respect to the term of office of mayor being for four years rather than for the two years prescribed by G. L. c. 43, § 48. This came about as a result of a special act of the Legislature in 1965 which, after approval by a majority of the voters of Fall River, changed the term of office of mayor in Fall River to four years. St. 1965, c. 346. In April, 1973, the plaintiffs and others filed a petition with the board pursuant to G. L. c. 43, § 17D, to place on the ballot the question of changing the term of office back to two years. In June, 1973, the city's law department issued an opinion that the petition was invalid, where-upon the board refused to place the question on the ballot. After the Superior Court's decree the question did appear on the ballot and was approved by a substantial majority of Fall River citizens.

The act we interpret is St. 1971, c. 311, codified as G. L. c. 43, §§ 17C and 17D.[2] The only issue before

---

[2] "*Section 17C.* Upon the filing with the city clerk of a petition,

the court is whether these provisions were applicable to the city of Fall River in the circumstances set forth.

The board emphasizes that § 17D, relied upon by the plaintiffs as authority for the referendum on a two-year

which petition shall be subject to the provisions of section seven or section seven A of chapter fifty-three, signed by at least five per cent of the number of registered voters residing in the city at the last regular city election, the city clerk shall place upon the ballot for the next regular city election to be held not less than sixty days after the date of the filing of such petitions the following question: —

'Shall the term of office of mayor of the city of              be four years?'

| YES. | |
|------|--|
| NO. | |

"If a majority of the votes cast in answer to said question is in the affirmative, the term of office of the mayor of said city shall thereafter be for four years and until the election and qualification of his successor, beginning with the next regular city election following the acceptance of this question.

"This section shall apply only in cities which have adopted Plan A, Plan B or Plan F under this chapter and in cities which have, under the provisions of any special act or any charter adopted under the provisions of Article LXXXIX of the Amendments to the Constitution, a mayor, as defined in subsection (a) of section ten of chapter forty-three B.

"The provisions of this section shall be applicable notwithstanding the provisions of section eighteen of said chapter forty-three B. Nothing contained herein shall be construed to prevent the amendment of a city charter by any method available under said Article LXXXIX of the Amendments to the Constitution or under said chapter forty-three B."

"*Section 17D.* In any city in which the term of office of mayor is four years under the provisions of section seventeen C, upon the filing with the city clerk of a petition, which petition shall be subject to the provisions of section seven or section seven A of chapter fifty-three, signed by at least five per cent of the number of registered voters residing in said city at the last regular city election, the city clerk shall place upon the ballot for the next regular city election to be held not less than sixty days after the date of the filing of such petitions the following question: —

'Shall the term of office of mayor of the city of              be two years?'

| YES. | |
|------|--|
| NO. | |

term of office, is dependent on § 17C, which describes the cities to which the procedure is applicable. The board first contends that Fall River does not qualify as one of the cities described in the third paragraph of § 17C. But Fall River has adopted a Plan A form of government and therefore falls within the first clause of the sentence. The board's interpretation of the sentence as meaning that the city must both meet the requirements of the first clause (that is, shall have adopted Plan A, Plan B, or Plan F) and also satisfy the description in the second clause is grammatically unsound and defies common sense. The second clause refers to cities which, by special act or by a charter adopted under the Home Rule Amendment,[3] have a "mayor" as defined in G. L. c. 43B, § 10 (a),[4] that is, "an officer elected by the voters as the chief executive officer of a city." Use of the conjunction "and," followed by repetition of the words "in cities which" prior to the second clause, gives the sentence the same meaning as if the first four words, "This section shall apply," appeared before each of the two clauses. Since Plan A, Plan B, and Plan F are the only plans with a mayor elected by the voters as chief executive officer, the evident purpose of these two clauses was to make §§ 17C and 17D applicable to all cities which by adoption of one of the plans or otherwise have such a mayor. The board's alternative construction, which would require a city to have a mayor pursuant to one of the plans and also pursuant to a special act or

---

"If a majority of the votes cast in answer to said question is in the affirmative, the term of office of the mayor of said city shall thereafter be for two years and until the election and qualification of his successor, beginning with the next regular city election following the acceptance of this question."

[3] Article 89 of the Amendments to the Constitution of the Commonwealth, replacing art. 2 of the Amendments.

[4] Inserted by St. 1966, c. 734, § 1.

home rule charter, is unreasonable and we do not adopt
it. *McCarthy* v. *Woburn Housing Authy.* 341 Mass.
539, 542 (1960).

The board further argues that § 17D is inapplicable to
Fall River because that section refers only to cities in
which the term of office is four years "under the provi-
sions of section seventeen C." The four-year term of
office in Fall River came about, of course, by way of a
special act and not through exercise of the referendum
procedure set forth in § 17C.

Some discussion of the background of §§ 17C and 17D
is appropriate here. At the time Fall River approved the
special act changing its term of office from two to four
years, there was no mechanism available other than a
special act to depart from the provisions of the optional
plans of government set out in the General Laws, none of
which provides for a term of office for mayor other than
a two-year term. G. L. c. 43, §§ 48 (Plan A), 58 (Plan
B), and 119 (Plan F). This circumstance was changed in
1966 with the approval of the Home Rule Amendment.
Under § 2 of the amendment cities were given the power
to adopt, revise, or amend a charter by following the
procedures described in §§ 3 and 4. See G. L. c. 43B,
§§ 1-19. Those procedures became the exclusive means
by which a city could change its charter. G. L. c. 43B,
§ 18. Altering a term of office required a petition of
fifteen per cent of the voters of a city, followed by
election of a charter commission which had ten months to
submit a new or revised charter to the city council
which, in turn, was given two months to provide for a
vote on whether to adopt the charter. Art. 89 of the
Amendments to the Constitution, §§ 3 and 4.

The proposal which led to the enactment of G. L.
c. 43, §§ 17C and 17D, as an additional mechanism for
charter revision with respect to the mayor's term of
office, was initiated in 1971 by the Massachusetts Mayors'
Association. The bill of the Mayors' Association, entitled
"An Act to provide for an optional four-year term for

mayors in certain cities," contained the provisions of
what is now § 17C, but did not make provisions for a
referendum on the question of a two-year term as under
§ 17D. 1971 House Bill No. 2049. Instead the bill left
subsequent amendment of the city charter with respect to
the term of office to the charter revision procedure of the
Home Rule Amendment. This bill was referred to the
committee on local affairs, which reported out H. 5217.
That bill added a new paragraph containing the provi-
sions of what is now § 17D. In the Senate, the new
paragraph was made a separate section, 1971 Senate
1419, and the bill was enacted as St. 1971, c. 311. The
effect of the new statute was to streamline the procedure
by which a city might change the term of office of its
mayor. In contrast to the procedure under the Home
Rule Amendment, all that is needed is a petition of five
per cent of the registered voters of a city, and the
question is submitted at the next regular city election
without going through the more cumbersome process of
first electing a charter commission to report on a revised
charter. Furthermore, the Legislature made certain that
the streamlined procedure works in both directions, not
just to extend the term of office as requested by the
Mayors' Association.

Viewing the provisions against this backdrop, we do
not believe that the Legislature intended to deny the
availability of the § 17D referendum procedure to a city
in the situation of Fall River. As discussed above, Fall
River plainly qualifies as one of the cities to which the
legislation was meant to apply. It would make little
sense to exclude Fall River from the operation of § 17D
simply because that city took the initiative to obtain a
special law having the effect of § 17C prior to the time
that § 17C was enacted. Under these circumstances we
do not read the opening clause of § 17D as limiting the
availability of the referendum procedure outlined therein

to cities which arrived at a four-year term strictly pursuant to the authority contained in § 17C.

"The object of all statutory construction is to ascertain the true intent of the Legislature from the words used. If a liberal, even if not literally exact, interpretation of certain words is necessary to accomplish the purpose indicated by the words as a whole, such interpretation is to be adopted rather than one which will defeat that purpose." *Lehan* v. *North Main St. Garage, Inc.* 312 Mass. 547, 550 (1942). *Cullen* v. *Mayor of Newton,* 308 Mass. 578, 583-584 (1941). *Price* v. *Railway Exp. Agency, Inc.* 322 Mass. 476, 484 (1948).

Since we conclude that § 17D is applicable to Fall River, the referendum approving a two-year term of office for mayor conducted under the procedure prescribed in § 17D is valid and may properly override the 1965 special act. Under § 9 of the Home Rule Amendment, special laws in effect as of 1966 have the force of an existing city charter and may be revised as such. Further, §§ 17C and 17D by their terms are applicable notwithstanding the otherwise exclusive procedures for charter revision as described in G. L. c. 43B, § 18. Therefore, the decree of the Superior Court is affirmed.

*So ordered.*