CITY OF LAWRENCE & another[1]  vs.  FRANCIS G. FALZARANO
& others[2]
(and a companion case[3]).

Suffolk. November 7, 1979. — March 4, 1980.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Contract,* Validity, With municipality. *Municipal Corporations,* Con-
tract. *Arbitration,* Authority of arbitrator, Judicial review.

A contract for a major renovation of a municipal hospital was valid
    despite the fact that St. 1971, c. 1080, prohibited performance under
    the contract absent a certificate of need from the Department of Public
    Health. [21-23]
Where a contract for the renovation of a municipal hospital had been
    executed by a proper city official and a sufficient appropriation existed
    in fact to cover the cost of the contract, the contract was not invalid
    because it lacked on its face the certification required by G. L. c. 44,
    § 31C. [24-26]
Where a contract, which included a provision that all disputes arising
    under it would be settled by arbitration, was valid, a defense to liabili-
    ty on the contract based on the illegality of performance was a dispute
    included within the broad agreement of the parties to arbitrate and
    was properly within the province of the arbitrators to decide. [26-27]
Pursuant to an arbitration clause in a contract for the renovation of a
    municipal hospital, it was within the power of the arbitrators to
    award damages for delay and loss of anticipated profits on the contract
    after the contract was terminated because the city was unable to ob-
    tain a certificate of need as required by St. 1971, c. 1080. [27-29]

TWO CIVIL ACTIONS commenced in the Superior Court on
April 20, 1976, and April 26, 1976, respectively.

The cases were heard by *George,* J., a District Court
judge sitting under statutory authority.

[1] Bessie M. Burke Memorial Hospital.

[2] Manzi Electric Corporation, W.R. Viens, Inc., Mari & Sons Flooring
Company, Inc., Harold J. Doerr Company, Inc., and Arcadia Construc-
tion, Inc.

[3] Francis G. Falzarano *vs.* City of Lawrence.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Warren G. Miller* for Francis G. Falzarano.

*Edward J. Grimley, Jr.,* City Solicitor, for the city of Lawrence.

QUIRICO, J. These are appeals from the denial of a motion to confirm, and the granting of a motion to vacate, an arbitration award handed down in favor of Francis G. Falzarano, a contractor doing business as Falzarano Construction Company, and certain subcontractors.

The case arises out of a contract for a major renovation of the Bessie M. Burke Memorial Hospital, a municipal hospital operated by the city of Lawrence (city). The judge of the Superior Court who ruled on the motions found the following facts. The contract was entered into by Falzarano and the city on November 23, 1971. On the next day the city learned that a new law had been passed, St. 1971, c. 1080, which had become effective on November 15, 1971, and which required that a determination of need be made by the Massachusetts Department of Public Health (DPH) before any major renovation work could be commenced on a health care facility. The city informed Falzarano of this state of affairs, and substantially no work was performed under the contract, although on November 30, 1971, Falzarano signed contracts with various subcontractors to perform work on the proposed renovation of the hospital, and certain equipment was moved to the hospital site. Subsequently the city attempted to obtain a certificate of need from the DPH but was not successful.[4] In March and April, 1972, Falzarano wrote to the mayor of the city concerning the delay. On May 26, 1972, the contract between Falzarano and the city was terminated by agreement of both par-

---

[4] Ultimately the DPH was required by a special act of the Legislature (St. 1973, c. 923) to issue the certificate of need for the renovation. See *Commissioner of Pub. Health v. Bessie M. Burke Memorial Hosp.,* 366 Mass. 734 (1975). However, for other reasons the project remains unaccomplished. See Rep. A.G. Pub. Doc. No. 12, at 64 (1977).

ties, but Falzarano reserved his right to claim recovery for damages incurred before that date.

On June 11, 1975, in accordance with a provision in the contract for the arbitration of disputes thereunder,[5] Falzarano filed a demand for arbitration with the American Arbitration Association, claiming damages for breach of contract. Hearings were commenced before a panel of arbitrators on January 29, 1976, at which time the city moved to dismiss the proceedings on the ground that the contract, including its arbitration clause, was illegal and unenforceable. The arbitrators denied this motion, and proceeded to hear evidence. On March 19, 1976, they made an award in favor of Falzarano and his several subcontractors in the amount of $74,225.00, of which some $58,500.00 was to go to Falzarano himself.[6]

The city then filed an application in the Superior Court seeking to vacate the award on the grounds that there was no valid contract and therefore no valid agreement to arbitrate, and that the arbitrators exceeded their authority in making the award. G. L. c. 251, § 12 (a) (3) and (a) (5). Falzarano filed a separate application in the same court to confirm the award. G. L. c. 251, § 11. The two applications were consolidated and heard together on statements of counsel and certain documentary evidence.

After the hearing the judge allowed the application to vacate and denied the application to confirm the award. In

[5] The "Agreement" between the parties as it appears in the record before us refers to various provisions which supplement it but do not appear on its face. In argument below and in his brief Falzarano stated that the arbitration clause of the contract provided as follows: "All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining. . . . This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law . . . ." The city does not contest this assertion.

[6] Between the time of the hearings and the rendering of the arbitrators' decision the city attempted to stay the proceedings through an action filed in the Probate Court for Essex County. The parties agree that this was an improper forum for such an action. G. L. c. 251, § 2 (b). This action has no bearing on the issues before us.

his accompanying order the judge held that, although the contract was legal, performance under it was illegal, which illegality was fundamental to the contract. He held therefore that there was no valid contract and no agreement to arbitrate, and that the arbitrators exceeded their powers in concluding otherwise.

From the judgments in these two actions Falzarano appealed to the Appeals Court, which upheld the decision of the judge, although on different grounds. *Lawrence* v. *Falzarano*, 7 Mass. App. Ct. 591 (1979). We granted further appellate review.

The issues raised are as follows: 1) was the contract, and the agreement to arbitrate contained in it, valid despite the fact that St. 1971, c. 1080, prohibited performance under the contract absent a certificate of need?[7] 2) was the contract valid despite the fact that it did not contain a certification by the city auditor that sufficient money had been appropriated for it, as required by G. L. c. 44, § 31C? 3) if the contract was valid, does the illegality of performing under the contract nonetheless require vacating the arbitration award? 4) were the arbitrators within their authority in granting an award which included damages both for delay and for lost profits?

We answer the first, second, and fourth issues in the affirmative, and the third in the negative, and therefore hold that the award was properly made and should have been confirmed.

1. *Validity of the Contract in Light of St. 1971, c. 1080.*

Statute 1971, c. 1080,[8] requires that no substantial construction or renovation of a public health facility be com-

---

[7] The legislative requirement of a DPH determination of need before allowing expenditures for certain health care facilities which first appeared in St. 1971, c. 1080, was later enacted on a permanent basis as G. L. c. 111, §§ 25B-26G, by St. 1972, c. 776, effective June 1, 1972. See *Commissioner of Pub. Health* v. *Bessie M. Burke Memorial Hosp.*, *supra* at 737.

[8] Statute 1971, c. 1080, provides in part as follows: "Section 1. Notwithstanding any contrary provision of law, no person shall (a) commence construction of a new health care facility at a specific location or commence construction altering, adding to, making major repairs to, re-

menced unless a certificate of need has been issued by the
DPH. Its purpose is "[t]o prevent unnecessary expansion of
health care facilities . . . and encourage appropriate alloca-
tion of resources for health care purposes." *Commissioner
of Pub. Health* v. *Bessie M. Burke Memorial Hosp.*, 366
Mass. 734, 735 (1975). The statute does not expressly state,
as it might have, that contracts for such work made in the
absence of a certificate of need were to be void. See *Brous-
sard* v. *Melong*, 322 Mass. 560, 561 (1948). "If the statute
does not declare a contract made in violation of it to be
void, and if it is not necessary to hold the contract void in
order to accomplish the purposes of the statute, the infer-
ence is that it was intended to be directory, and not prohibi-
tory of the contract. . . ." *Id.*, quoting *Bowditch* v. *New
England Mut. Life Ins. Co.*, 141 Mass. 292, 295 (1886).

---

modelling, renovating or replacing an existing such facility or part thereof
or (b) substantially change its services, during the period extending from
the effective date of this act to May the thirty-first, nineteen hundred and
seventy-two unless there is a determination by the department of public
health that there is need therefor. Such determination shall, upon request
of the person applying therefor, be made after hearing and shall be based
upon current information concerning, among other things, present and
projected future needs, shall be in writing and set forth the reasons there-
for, shall be kept on file in the office of the commissioner of public health
and shall be a public record. Except in the case of an emergency requir-
ing immediate action to prevent further damage to a health care facility
or part thereof, such determination shall be made only after ten days'
notice and opportunity to comment upon the need for such construction
or change in services has been given to the single agency of the common-
wealth and appropriate areawide health planning agency designated pur-
suant to the provisions of Sections 314 (a) and 314 (b) of the Federal
Public Health Service Act. The provisions of this section shall not apply
to any construction or change in services requiring a capital expenditure
of less than one hundred thousand dollars.

"  . . . .

"Section 5. The superior court shall have jurisdiction in equity, upon
the petition of the department of public health or of any ten taxpayers in
the commonwealth, to enjoin any violation or imminently threatened
violation of the provisions of section one of this act."

For a summary and analysis of the background of this chapter, see
*Brookline* v. *Medical Area Serv. Corp.*, 8 Mass. App. Ct. 243, 249-254
(1979).

The statute did make illegal and subject to injunction the performance called for by this contract so long as no certificate of need had issued. However, "[m]any contracts cannot lawfully be performed without securing a permit, license, or approval from some governmental officer or board, and yet the contracts are not deemed illegal." *Nussenbaum* v. *Chambers & Chambers Inc.*, 322 Mass. 419, 423 (1948). See 15 S. Williston, Contracts § 1767 (3d ed. 1972). If a certificate of need had been secured before the termination of the contract, Falzarano would have been hard put to contend that the contract was void because illegal ab initio.

Further, the statute prohibits the "commenc[ing of] construction." In the present case no illegal construction was commenced, and no recovery is sought for the value of goods or services illegally provided. In this respect it can be distinguished from cases cited by the city in which recovery for such performance was denied. *Hawes Elec. Co.* v. *Angell*, 332 Mass. 190 (1955). *Tocci* v. *Lembo*, 325 Mass. 707 (1950). There is no argument that, apart from the lack of certification of need, the renovation contracted for was an illegal purpose or one contrary to public policy. Upholding the legality of the contract is not inconsistent with the purpose of the statute to institute centralized control over the allocation of health care resources to prevent unnecessary and costly duplication of services. See *Commissioner of Pub. Health, supra.* "Courts do not go out of their way to discover some illegal element in a contract or to impose hardship upon the parties beyond that which is necessary to uphold the policy of the law." *Nussenbaum* v. *Chambers & Chambers Inc., supra* at 422. See *Town Planning & Eng'r Assocs.* v. *Amesbury Speciality Co.*, 369 Mass. 737, 745-747 (1976). The present case raises no such necessity, and the contract need not be held invalid on this ground. *Valley Stream Teachers Fed. Credit Union* v. *Commissioner of Banks*, 376 Mass. 845, 852 (1978).

2. *Validity of the Contract in Light of G. L. c. 44, § 31C.*

General Laws c. 44, § 31C (St. 1964, c. 693, § 1),[9] requires that the certification of the city auditor or other official, stating that an appropriation covering the amount of a municipal building contract is available therefor, must appear on the contract before it "shall be deemed to have been made." No such certification appears on the face of the contract. However, there was in evidence before the judge a certified copy of an order adopted by the Lawrence city council duly appropriating $1,500,000 for the renovation of the hospital, an amount well over Falzarano's total contract price of $969,610.

We have stated generally that "[p]ersons dealing with a municipality must take notice of limitations . . . upon the contracting power of the municipality and are bound by them and cannot recover upon contracts attempted to be made in violation of them." *Marlborough* v. *Cybulski, Ohnemus & Assocs.*, 370 Mass. 157, 160-161 (1976). *Sancta Maria Hosp.* v. *Cambridge,* 369 Mass. 586, 595 (1976). In a series of cases we have required strict conformity with the provision of G. L. c. 44, § 31, the purpose of which section is to provide central municipal control over irresponsible municipal spending, *Amherst-Pelham Regional School Comm.* v. *Department of Educ.,* 376 Mass. 480, 494 (1978), and "to set rigid barriers against expenditures in excess of appropriations." *Rich & Son Constr. Co.* v. *Saugus,* 355 Mass. 304, 307 (1969), quoting from *Flood* v. *Hodges,* 231 Mass. 252, 256 (1918).

We believe, as did the Appeals Court, that c. 44, § 31C, entitled "An Act providing that payment for certain public

[9] The section provides in pertinent part: "No contract for the construction, reconstruction, alteration, remodeling, repair or demolition of any public building . . . by any city . . . costing more than two thousand dollars shall be deemed to have been made until the auditor or accountant or other officer of the city . . . having similar duties has certified thereon that an appropriation in the amount of such contract is available therefor. . . . The certificate . . . that an appropriation in the amount of such contract or order is available shall bar any defense by the city . . . on the grounds of insufficient appropriation; and any law barring payment in excess of appropriations shall not apply to amounts covered by any certificate under this section."

construction contracts shall not be barred by reason of being in excess of appropriations," discloses a very different legislative purpose from that of c. 44, § 31. We concur in the Appeals Court's statement of this purpose, that being "to provide contractors engaged in public construction work with a ready and reliable means of ascertaining that there is an appropriation sufficient to cover the proposed work and to protect them where the contract carries a certification that there exists a sufficient appropriation," but no such appropriation exists. *Lawrence* v. *Falzarano, supra* at 596-597. The statute was thus enacted for the benefit of one in Falzarano's position. *Broussard* v. *Melong,* 322 Mass. 560, 562 (1948). Where it is unquestioned that the contract was executed by a proper city official and that a sufficient appropriation existed in fact to cover the cost of the contract, we hold that the contract is not necessarily invalid because it lacks on its face the certification required by c. 44, § 31C. While strict compliance with the statute is preferable, a contrary result in this case would allow the city to benefit from its omission, which would conflict with the statutory policy. We adopt a reading of the statute which will effectuate rather than frustrate its evident purpose. See *Medeiros* v. *Election Comm'rs of Fall River,* 367 Mass. 286, 292 (1975), and cases cited. We therefore hold that the contract, including the agreement to arbitrate disputes, was valid.[10]

This case is not controlled by *Ryan* v. *Somerville,* 328 Mass. 324 (1952). In that case there was no indication that an appropriation had ever been made for the contract, as was required under the amendment to the city charter at issue in that case. St. 1937, c. 363. By contrast, it is uncontested that a more than ample appropriation existed for the present contract. Furthermore, there was no indication that the amendment to the city charter had as part of its

---

[10] Like the Appeals Court, we do not address the city's argument that the contract was illegal because it violated a certain city ordinance. The ordinance is not properly before us, as it was not included in the record on appeal and is not an appropriate subject of judicial notice. *Fournier* v. *Central Taxi Cab, Inc.,* 331 Mass. 248, 249 (1954), and cases cited.

purpose the protection of parties contracting with the city, as is the case with G. L. c. 44, § 31C. See St. 1937, c. 363.

3. *Effect of Illegality of Performance.*

We next consider whether the performance called for under the contract was illegal, and if so, whether this illegality is itself a sufficient ground to void the contract and the included arbitration agreement. The judge held that while the contract was legal, performance was illegal, which illegality was "fundamental to the contract and makes performance impossible."[11] This impossibility, it seems, was the basis for his holding that at the time arbitration was demanded no valid contract existed between the parties.

We find this reasoning somewhat circular. The parties were bound by a valid contract, which included a provision that all disputes arising under it would be settled by arbitration. This agreement to arbitrate is governed by G. L. c. 251, regulating the arbitration of commercial disputes. Section 1 thereof states in part that "a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Section 2 of c. 251 provides for proceedings to compel or to stay arbitration, and states in subsection (*b*) that "[u]pon application, the superior court may stay an arbitration proceeding commenced or threatened if it finds that there is no agreement to arbitrate." Section 12 permits the court to vacate an arbitration award upon certain specified grounds,

---

[11] The judge's decision was in relevant part as follows: "I find that although the contract was legal performance was illegal. This illegality was not caused by either party and there has been no breach of the contract by either party. The illegality is fundamental to the contract and makes performance impossible. This reasoning is confirmed by the actions of the parties in mutually rescinding the contract in May of 1972.

"There being no valid binding contract between the parties when arbitration was sought, and the city raising this issue, the arbitrators exceeded their powers in determining that a contract binding upon the parties was in force at the time arbitration was sought."

including at subsection (a) (3) that "the arbitrators exceeded their powers"; and at subsection (a) (5) that "there was no arbitration agreement and the issue was not adversely determined in proceedings under section two and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."

Since the contract was valid, the agreement to arbitrate contained in it was binding and enforceable unless revoked. G. L. c. 251, § 1. The question whether the termination of the contract on May 26, 1972, served to revoke the theretofore valid arbitration agreement [12] was not briefed or argued in the trial court or on appeal, and thus has been waived. The defense to liability on the contract based on the illegality of performance was a dispute which was included within the broad agreement of the parties to arbitrate, and was properly within the province of the arbitrators to decide. See *Quirk* v. *Data Terminal Syss., Inc.*, 379 Mass. 762, 765 (1980), citing *Glenn Acres, Inc.* v. *Cliffwood Corp.*, 353 Mass. 150, 154 (1967). Cf. *County of Middlesex* v. *Gevyn Constr. Corp.*, 450 F.2d 53, 55-56 (1st Cir. 1971), cert. denied, 405 U.S. 955 (1972). The city argued this defense before the arbitrators and did not prevail. The facts that this defense may have entitled the city to prevail if the matter were initially tried before a court, or that the arbitrators may have made an error of law in reaching their decision, do not permit a court acting under the limited authority given by c. 251, § 12, to vacate or refuse to confirm the arbitration award. *Trustees of Boston & Me. Corp.* v. *Massachusetts Bay Transp. Auth.*, 363 Mass. 386, 390 (1973).

4. *Awarding of Damages by Arbitrators.*

The final issue is whether the arbitrators exceeded their authority in awarding damages for delay and for lost profits

---

[12] But see *Mendez* v. *Trustees of Boston Univ.*, 362 Mass. 353, 356 (1972).

under the contract so as to require that the award be vacated under G. L. c. 251, § 12 (a) (3).

In this case a sufficient appropriation was properly made to cover the cost of the contract to the city. Compare *Marlborough* v. *Cybulski, Ohnemus & Assocs., supra.* As part of the contract the city agreed to submit disputes arising under it to arbitration. Fulfilment of a contract for the renovation of a public hospital is a purpose for which municipalities generally may expend public funds. G. L. c. 40, § 5 (19), (20). Compare *Boston Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 467 (1976). It is well settled that a city which is a party to a contract may be held liable to respond in damages for a breach, so long as relevant statutory requirements are met. See e.g., *Singarella* v. *Boston,* 342 Mass. 385 (1961). Such damages may include damages for delay or for anticipated profits.

The purpose of G. L. c. 251 governing arbitration is to provide further speedy resolution of disputes by a method which is "not subject to delay and obstruction in the courts." *Quirk* v. *Data Terminal Syss., Inc., supra* at 767. As noted above, judicial review of arbitration awards is confined to certain narrow grounds. Arbitration, it is clear, may not "award relief of a nature which offends public policy or which directs or requires a result contrary to express statutory provision," S.E. Eager, The Arbitration Contract and Proceedings § 121.6 (1971), or otherwise transcends the limits of the contract of which the agreement to arbitrate is but a part. *Marlborough* v. *Cybulski, Ohnemus & Assocs., supra.* However, within these bounds and within the limits of the agreement to submit to arbitration, arbitrators have broad authority to establish a balance between the parties. See *M.S. Kelliher Co.* v. *Wakefield,* 346 Mass. 645, 647 (1964); *Wachusett Regional Dist. School Comm.* v. *Wachusett Regional Teachers Ass'n,* 6 Mass. App. Ct. 851 (1978). Cf. *School Comm. of Boston* v. *Boston Teachers Local 66,* 378 Mass. 65 (1979), and cases cited. If the arbitrators in assessing damages commit an error of law or fact, but do not overstep the limits of the issues submitted to them, a court

may not substitute its judgment on the matter. *Trustees of Boston & Me. Corp., supra.*

Falzarano demanded arbitration as to his claims of damages for delay and loss of anticipated profits on the contract. Clearly these matters fell within the broad language of the arbitration clause in the contract. We presume that in making their award the arbitrators rendered decision as to both these matters and on no others. *Fazio* v. *Employers Liab. Assurance Corp.,* 347 Mass. 254, 257 (1964). Both of these grounds are aspects of the potential liability to which any contracting party is commonly subject. We do not believe that recovery on either ground is in the circumstances of this case contrary to legislative or other public policy, whether that of St. 1971, c. 1080, or of G. L. c. 44, § 31C, or otherwise beyond the power of the arbitrators to award. To distinguish among available bases of recovery on this contract, and to declare one or another theory to be unavailable as against public policy, would deprive those who contract with public authorities of their rightful expectations after they have engaged in and survived the statutorily prescribed bidding procedure. Further, such an extension of the authority of a court to declare, under G. L. c. 251, § 12 (*a*) (3), that arbitrators have "exceeded their powers" would tend to undermine the predictability and effectiveness of arbitration as a method of dispute resolution.

For these reasons, we hold that no grounds exist for vacating the present arbitration award under G. L. c. 251, § 12. We therefore reverse the judgments and remand the cases to the Superior Court where orders and judgments are to be entered allowing Falzarano's application to confirm and denying the city's application to vacate the arbitration award.

*So ordered.*