Toomey, J.
In the underlying action the plaintiff, The Barletta Company, Inc. (Barletta) has asserted a variety of claims against the City of Leominster (Leominster), Metcalf and Eddy, Inc. (MScE) and Environmental Operating Services, Inc. (EOS) for economic damages Barletta allegedly sustained due to actions *148 undertaken by the defendants which caused Barletta to be deprived of payment for services it rendered to Leominster. Leominster, M&E and EOS have filed separate motions for summary judgment, alleging that they are entitled to entry of judgment in their favor as to all counts of Barletta’s complaint. For the reasons enumerated below, their motions are allowed.
BACKGROUND
In October of 1980, Barletta and Leominster entered into a contract for Barletta to construct a new wastewater treatment facility and to dismantle an existing wastewa-ter treatment facility. At some time prior to Barletta’s completion of its obligations under the contract, Leominster elected to privatize the operation of the original facility (in use during the pendency of the construction of the “new” plant) which had previously been managed by the city’s Department of Public Works (DPW). Barletta alleges that, in response to this action, DPW workers at the “old” plant refused to process incoming waste in the months prior to EOS’s takeover of plant operations. It is undisputed that an abundance of untreated waste accumulated at the facility.
Barletta alleges that M&E, the project engineer, and EOS, the new management company, elected to store this excess waste in the old plant’s digester and aeration tanks, a use which Barletta alleges these tanks were not intended for. It is undisputed that the waste stored in the tanks solidified and became septic.
Pursuant to its contract with Leominster, Barletta bore the responsibility of removing and disposing of sludge from the old plant’s digester tanks. In furtherance of this obligation, Barletta submitted to M&E a so-called plan of operation, which called for Barletta to process this material through either the existing treatment facility or the newly constructed facility.
Barletta alleges that either Leominster or M&E demanded that Barletta remove the material that was stored in the digester tanks and aeration tanks as a result of the purported DPW work stoppage. It is undisputed that, as a result of the transformation that this material underwent during storage, most of it could not be processed through the treatment facilities. Accordingly, the waste was hauled in closed container trucks to a landfill, where it was buried, all at Barletta’s expense.
Barletta subsequently submitted a bill to Leomins-ter through M&E (which was responsible for interpreting Barletta’s contract with the city). Barletta claims that M&E initially represented to it that the expenses would be approved. It is undisputed that M&E ultimately recommended that Leominster reject the claim for additional compensation. Leominster followed that recommendation.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and that the moving party is entitled to a judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass, at 17. ”[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 297, 209 (1989).
1. Barletta v. Leominster
Barletta has asserted claims against Leominster for breach of contract, violations of G.L.c. 93A, misrepresentation, quantum meruit and interference with contractual relations. Leominster’s memorandum in support of its motion only references the breach of contract claim, although its counsel advanced an argument concerning its liability pursuant to G.L.c. 93A at the hearing on its motion.
The thrust of Leominster’s position is that Barletta’s contract claims are barred by G.L.c. 44, §§31 and 31C. The former provides, in pertinent part, as follows:
No department financed by municipal revenue, or in whole or in part by taxation, of any city . . . shall incur a liability in excess of the appropriation made for the use of such department, each item recommended by the mayor and voted by the council in cities . . . being considered as a separate appropriation, except in cases of major disaster, including, but not limited to, flood, drought, fire, hurricane, earthquake, storm or other catastrophe, whether natural or otherwise, which poses an immediate threat to the health or safety of persons or property, and then only by a vote in a city of two-thirds of the members of the city council.
Leominster contends that Barletta’s failure to ensure that the funds that it claims it is owed were appropriated by the mayor of Leominster for this purpose forecloses its claim, in light of the strict interpretation given to §31. See, Lawrence v. Falzarano, 380 Mass. 18, 24 (1980); Amherst-Pelham Regional School Comm. v. Department of Educ., 376 Mass. 480, 494 (1978). The city’s argument, however, presupposes that the mayor is a “department” within *149 the meaning of the statute. Contrary to Leominster’s assertion in its memorandum in support of its motion, the appellate courts of this Commonwealth have never so ruled.[1] Indeed, the First Circuit has determined that G.L.c. 44, §31 cannot be construed so as to invalidate a contract entered into by a city’s mayor when there is no adequate appropriation. Ungerer v. Smith, 765 F.2d 264, 266 (1985).
This court need not, however, tarry long at the application of §31 in light of the absolute defense that G.L.c. 44, §31C affords to the city.
G.L.c. 44, §31C provides, in pertinent part, that:
No contract for the construction, reconstruction, alteration, remodeling, repair or demolition of any public building or public work by any city... costing more than two thousand dollars shall be deemed to have been made until the auditor or accountant or other officer of the city... having similar duties has certified thereon that an appropriation in the amount of such contract is available therefor and that an officer or agent of the city . . . has been authorized to execute said contract and approve all requisitions and change orders. No order to the contractor for a change in or addition to the work to be performed under a contract subject to this section, whether in the form of a drawing, plan, detail or any other written instruction, unless it is an order which the contractor is willing to perform without any increase in the contract price, shall be deemed to have been given until the auditor or accountant, or other officer of the city . . . having similar duties, has certified thereon that an appropriation in the amount of such order is available therefor; but such certificate shall not be construed as an admission by the city... of its liability to pay for such work. The certificate of the auditor or accountant or other officer of the city.. . having similar duties, that an appropriation in the amount of such contract or order is available shall bar any defense by the city ... on the grounds of insufficient appropriation; and any law barring payment in excess of appropriations shall not apply to amounts covered by any certificate under this section.
This section was primarily intended “ ‘to provide contractors engaged in public construction work with a ready and reliable means of ascertaining that there is an appropriation sufficient to cover the proposed work and to protect them where the contract carries a certification that there exists a sufficient appropriation,’ but no such appropriation exists.” Reynolds Brothers, Inc. v. Norwood, 414 Mass. 295, 300-01 (1993) (citations omitted). Accordingly, §31C has been construed so as to permit a contractor’s recovery for work performed, even in the absence of a proper certificate of appropriation, where a sufficient appropriation has, in actuality, been made. Lawrence v. Falzarano, supra at 25. In the case at bar, however, there is no dispute that no appropriation was ever made for the additional work nor was a certification provided. Affidavit of John R. Tata, ¶¶4, 7. The absence of both an appropriation and a certification serves to defeat Barletta’s contract claim. See Ryan v. Somerville, 328 Mass. 324, 326 (1952).[2]
Leominster contends that Barletta’s .claim against it for damages pursuant to G.L.c. 93A, §11 is not viable in light of the Supreme Judicial Court’s decision in United States Leasing Corp. v. Chicopee, 402 Mass. 228 (1988). In that case, the court concluded that, irrespective of whether a municipality may potentially be held liable pursuant to G.L.c. 93A, §11,[3] the city of Chicopee was not engaging in trade or commerce pursuant to G.L.c. 93A, §11 when it entered into an agreement to lease a computer system. Id. at 232-33.1 reach the same conclusion here. Further, I note that the claimed actions which Barletta contends subject Leominster to liability (instructing M&E or EOS to utilize the tanks for storage, failing adequately to define Barletta’s responsibilities in the contract documents and leading Barletta to believe that it would be able to utilize its plan of operation when Leominster knew otherwise) have been exposed by the materials submitted by the parties either as having never occurred as described by Barletta, or being of a degree that fails to rise to the level of “rascaliiy” that is a prerequisite to recovery pursuant to G.L.c. 93A, §11. Levings v. Forbes & Wallace, Inc., 8 MassApp.Ct. 498, 504 (1979). As such, summary judgment for Leominster must enter on this count.
Barletta’s remaining counts against Leominster are similarly lacking in merit. In its two counts alleging misrepresentation, Barletta asserts that the plans and specifications submitted to Barletta were incomplete and that the city had represented to Barletta that it would be paid for the claimed additional work it was forced to perform.
To the degree that these counts allege negligence in the preparation of the contract specifications, they fail to state a claim since recovery may not be had for purely economic injuries in negligence actions. Garweth Corp. v. Boston Edison Co., 415 Mass. 303, 305 (1993). To the extent that the counts allege that, at the time the contract was entered into, Leominster knowingly deceived Barletta regarding the latter’s anticipated ability to utilize the treatment facilities to process the waste for which Barletta was responsible, the counts must fail due to Barletta’s admission in its memoranda that the work stoppage was wholly unanticipated and resulted in a “changed condition.” Finally, Barletta’s claim that it was damaged by Leominster’s alleged promises to pay for the work has been completely undermined by the undisputed evidence submitted (mostly by Barletta) that such promises (if any) were made after Barletta had completed the work and submitted a bill, and as such, were not relied upon by Barletta when it performed the work. See Barrett Assocs., Inc. v. Aronson, 346 Mass. 150, 152 (1963) (reliance must be proven to prevail in an action alleging fraud); Loranger Constr. Corp. v. E.F. *150 Hauserman Co., 6 Mass.App.Ct. 152, 155 (1978) (recovery in an action for promissory estoppel may be had “where reliance has been placed upon statements of future intent”).[4] Leominster will have summary judgment on these counts also.
2. Barletta v. M&E
Barletta has asserted claims against M&E for misrepresentation, violations of G.L.c. 93A, negligence and interference with contractual relations.[5] The misrepresentation claims fail for the same reasons as do those asserted against Leominster.
The claim for negligence, which Barletta asserts is premised upon M&E’s negligent advice to EOS to utilize the digester and aeration tanks for storage, cannot lie in the absence of an allegation (much less proof) of physical harm or property damage. Garweth Corp. v. Boston Edison Co., supra. The asserted basis for the G.L.c. 93A claim is M&E’s decision to change its recommendation to Leominster that Barletta be paid for the work in question and M&E’s decision to utilize the tanks for storage in the wake of the DFW work stoppage. Putting aside the likely justification for both acts, as demonstrated by the materials submitted before me, I conclude that, as a matter of law, neither action is of a qualify that would justify the imposition of liability pursuant to G.L.c. 93A. Levings v. Forbes & Wallace, Inc., supra. The claim for intentional interference with a contract is critically deficient for two reasons: 1) Barletta did not have a valid contract with Leominster which called for payment for the claimed additional work performed;[6] and 2) Barletta has failed to rebut evidence offered by M&E which demonstrates that the conduct that Barletta identifies as being actionable was not attended by an ulterior motive or accomplished by wrongful means.[7] There being no genuine issues of material fact as to any of Barletta’s claims against M&E, the motion for summary judgment will be allowed.
3. Barletta v. EOS
Barletta has asserted claims against EOS for breach of contract and intentional interference with a contract. Both counts are utterly lacking in foundation.
Barletta’s claim for breach of contract, which it asserts arose out of its “day-to-day relationship” with EOS, is specious. In the face of EOS’s clear demonstration that no such contractual relationship ever existed, Barletta has failed to come forward with any evidence of the existence of a contract, the terms of such contract or an explanation of the manner in which EOS purportedly breached the contract. As for the interference claim, Barletta appears to be contending that EOS’s utilization of the digester and aeration tanks interfered with Barletta’s original commitment to Leominster. Barletta has, however, acknowledged that this action was in response to the “emergency” conditions created by the DPW work stoppage. By definition, then, the actions of EOS were not inspired by an improper motive nor accomplished by improper means. The motion of EOS for summary judgment is allowed.
ORDER
For the foregoing reasons it is hereby ORDERED that the defendants’ motions for summary judgment are ALLOWED.[8]

 In the case Leominster relies on in support of this proposition, Broadhurst v. Fall River, 278 Mass. 167 (1932), the Supreme Judicial Court analyzed a different statute, St. 1931, c. 44.

 I also conclude that no recovery may be had pursuant to Barletta’s claim for quantum meruit, since the availability of such a cause of action in the circumstances of this case would be utterly contrary to the legislative purposes underlying G.L.c. 44, §§31 and 31C.

 But see B&R Realty Co. v. Springfield Redevelopment Auth., 708 F.Supp. 450, 457 (D.Mass. 1989).

 Iittle need be said of Barletta’s claim that Leominster interfered with its own contract, since aside from the nonexistence of a valid contract to pay for the alleged additional work, one cannot tortiously interfere with one’s own contract. Recourse may instead be had through an action for breach of contract.

 Barletta withdrew a claim for breach of contract during the hearing on these motions.

 United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812 (1990) (“[I]n an action for intentional interference with a contract, the plaintiff must prove that... he had a contract with a third party”).

 Schwanbeck v. Federal-Mogul Corp., 31 Mass.App.Ct. 390, 412 (1991).

 No motion for summary judgment or other pleading has been received from defendant Girouard and, accordingly, this Order has no application to Barletta’s case against him.