BRADSTON ASSOCIATES, LLC *vs.* ANDREA J. CABRAL[1]
& another.[2]

No. 06-P-1844.

Suffolk. October 4, 2007. - December 12, 2007.

Present: RAPOZA, C.J., MILLS, & GRAINGER, JJ.

Further appellate review granted, 450 Mass. 1106 (2008).

*Sheriff. Suffolk County. Boston. Municipal Corporations,* Auditor, Contracts, Lease of property.

In a civil action brought by a property owner to enforce a written lease for office space, a Superior Court judge properly granted summary judgment in favor of the defendants (the Suffolk County sheriff and the sheriff's department, whose operations are paid for from the city of Boston's treasury), where the lease provided that it would become effective upon the execution of the city's standard contract, and where the standard contract, although signed by the parties, lacked the appropriate city auditor's certification, as required by St. 1998, c. 262, § 1. [822-825]

CIVIL ACTION commenced in the Superior Court Department on June 4, 2002.

The case was heard by *Allan van Gestel,* J., on motions for summary judgment.

*Christopher E. Mullady* for the plaintiff.

*Theodore J. Folkman* for the defendants.

MILLS, J. Bradston Associates, LLC (Bradston), and the Suffolk County sheriff's department executed a written ten-year lease for office space. When the defendants sought to terminate the lease, Bradston filed suit in Superior Court.[3] Upon cross motions for summary judgment, a judge granted the defendants' motion, determining that the lease is unenforceable because it

---

[1] In her capacity as sheriff of Suffolk County.

[2] Suffolk County sheriff's department.

[3] Upon earlier consideration of this lease, we remanded the case for reasons unrelated to this appeal. See *Bradston Assocs., LLC* v. *Cabral,* 61 Mass. App. Ct. 1116 (2004).

lacked the city auditor's certification[4] as to available appropriation or citation to an appropriate authorizing statute, as required by St. 1998, c. 262, § 1.[5] We agree.

Chapter 262 provides, in relevant part, that:

> "All contracts made by . . . any officer, board or official of the county of Suffolk having power to incur obligations on behalf of said county in cases where said obligations are to be paid for wholly from the treasury of said city [of Boston], shall, when the amount involved is $10,000 or more, . . . be in writing; and no such contract shall be deemed to have been made or executed until . . . the auditor of said city has certified thereon that an appropriation is available therefor or has cited thereon the statute under authority of which the contract is being executed without an appropriation."

The lease provides that it "becomes effective only upon execution and delivery thereof by [Bradston] and [the defendants], and upon execution of the City of Boston Standard Contract" (standard contract). Although such a standard contract was signed by the parties, it has a certification by the city auditor that states "APPROVED AS TO AVAILABILITY OF APPROPRIATION OR PURSUANT TO ARTICLE 12.2 OF THE GENERAL CONDITIONS IN THE AMOUNT OF $0.00." In addition, the standard contract, under article 12.3 of its general conditions, provides that "[w]hen the amount of the City Auditor's certification of available funds is less than the face amount of the Contract, the City shall not be liable for any claims or requests for payment by the Contractor which would cause total claims or payments under this Contract to exceed the amount so certified."

---

[4]Unlike any other county sheriff's department, which is supported and controlled by the communities located in the county, the city of Boston alone controls the Suffolk County sheriff's department and pays for its operations from the city's treasury. See *Boston* v. *Chelsea*, 212 Mass. 127, 128-129 (1912). This is a result of the city of Boston having purview over financial matters pertaining to the operation of the county of Suffolk. See *Thompson* v. *Chelsea*, 358 Mass. 1, 6-7 (1970). See also G. L. c. 35, § 1 (city of Boston treasurer is also the Suffolk County treasurer); G. L. c. 35, § 42 ("The auditor of Boston shall be the auditor of Suffolk county. No bill against said county shall be paid until audited and allowed by him").

[5]The parties and motion judge refer to St. 1998, c. 262, § 1, as "c. 262." We do likewise.

Relying upon the language of c. 262 the defendants argue, in essence, that because the city auditor had not certified an appropriation for the lease, and because the standard contract recites that the defendants will not be liable for any claims exceeding the auditor's certified appropriation, the lease is unenforceable under c. 262. Bradston, in turn, essentially argues that because the standard contract shows the internal code "SUF02056" on its face[6] — an admitted reference to the defendants' 2002 fiscal year operating budget under line item 8910-0000, see St. 2001, c. 177, § 2 — and because the standard contract has an "executed" stamp signed by a member of the city auditor's department, the auditor in practical effect certified that an amount equal to the face amount of the contract (slightly under $7 million) had been made available from the defendants' budget.

The parties agree that c. 262 applies to the standard contract. Their dispute is whether the city auditor certified an available appropriation or has cited a statute making such an appropriation unnecessary. The question therefore becomes, as Bradston argues, whether the reference to the defendants' unallocated 2002 budget — through the internal code "SUF02056" — combined with an "executed" stamp appearing on the face of the standard contract satisfies the available appropriation requirement of c. 262. Bradston's argument essentially reduces to the proposition that an "executed" stamp can substitute for an auditor's certification of available funds. Chapter 262, however, makes a clear distinction between those two events or concepts. Bradston never addresses how c. 262 can be said to have resolved the evil it presumably was enacted to remedy — preventing a municipality from spending money beyond its means — if an auditor's "$0.00" appropriation can be overridden simply by affixing an "executed" stamp on the contract.

In the alternative, Bradston argues that the reference to "SUF02056" constitutes, within the meaning of c. 262, the city

---

[6]This reference does not appear in the city auditor's certification, but instead appears in a separate code line under the heading "Project/Grant" located above the city auditor's certification. This code line does not reference the city auditor's certification, and the city auditor's certification does not reference this code line.

auditor's "citation" to the statute under which the contract is being executed "without an appropriation." The judge decided otherwise, stating:

> "SUF02056 does not appear to be a reference to a law passed by a legislative body. And even if it can be stretched to refer to the Fiscal 2002 state budget, it certainly does not refer to any authority on which the Standard Contract in issue is being executed. At most, it refers to a legislative enactment to appropriate an unallocated aggregate amount of money to the Sheriff's Department to be spent as the Sheriff properly allocates. It has nothing whatsoever to do with the purported ten-year lease agreement between Bradston and the Sheriff's Department."

Bradston responds on appeal by raising a host of semantic arguments regarding the meaning of certain terms, including "executed" and "signed," by invoking agency theory[7] and by citing *Lawrence* v. *Falzarano*, 380 Mass. 18, 25 (1980), for the general proposition that c. 262 does not require perfect compliance with its terms.

We are not persuaded that *Lawrence* v. *Falzarano* is helpful to Bradston here. The issue in *Lawrence* was whether G. L. c. 44, § 31C, which contains language similar to c. 262, invalidated a contract where the city auditor failed to certify an appropriation. *Id.* at 24. The Supreme Judicial Court held that the contract was valid and the certification requirements were met because a specific appropriation for the contract had been made by the city council. *Id.* at 24-25. Here, by contrast, there was no evidence of any such targeted appropriation. Also, unlike in *Lawrence*, the city auditor's certification here is not a mere formality and its absence is not an incidental omission. The city auditor did make a certification on the standard contract, although that certification, "in the amount of $0.00," functionally attested that no funds were available to fulfill the lease.

Accordingly, summary judgment dismissing Bradston's complaint was properly granted.

*Judgment affirmed.*

---

[7]Apparently in an attempt to show that the "executed" stamp, though executed by a person without either apparent or actual authority to certify an appropriation on behalf of the auditor, could function as such.