Chase Precast Corp. *v.* John J. Paonessa Co., Inc.; Commonwealth.

CHASE PRECAST CORPORATION *vs.* JOHN J. PAONESSA
COMPANY, INC., & another;[1] COMMONWEALTH,
third-party defendant.

Worcester. November 7, 1990. - February 20, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Contract*, Performance and breach, Subcontract, Public works, With Commonwealth. *Commonwealth*, Contracts. *Law of the Case.*

Discussion and definition of the doctrine of frustration of purpose as a defense to an action for breach of contract. [373-375]

In the circumstances of a subcontract for the provision of concrete highway median barriers, where the Department of Public Works unforeseeably and unilaterally deleted provision of the barriers from the main contract after construction began and where the contractor and subcontractor had not allocated the risk of such a cancellation, the contractor was entitled to rely on the defense of frustration of purpose when the subcontractor brought an action for breach of contract. [375-378]

Discussion of the applicability of the doctrine of the "law of the case." [378-379]

CIVIL ACTION commenced in the Superior Court Department on July 25, 1986.

The case was heard by *Gerald F. O'Neill, Jr.*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*David A. Talman* for the plaintiff.

*John J. Spignesi* for John J. Paonessa Co., Inc.

*Gerald K. Kelley*, Assistant Attorney General, for the Commonwealth.

LYNCH, J. This appeal raises the question whether the doctrine of frustration of purpose may be a defense in a breach

---

[1] John J. Paonessa. We shall refer to a single defendant.

of contract action in Massachusetts, and, if so, whether it excuses the defendant John J. Paonessa Company, Inc. (Paonessa), from performance.

The claim of the plaintiff, Chase Precast Corporation (Chase), arises from the cancellation of its contracts with Paonessa to supply median barriers in a highway reconstruction project of the Commonwealth. Chase brought an action to recover its anticipated profit on the amount of median barriers called for by its supply contracts with Paonessa but not produced. Paonessa brought a cross action against the Commonwealth for indemnification in the event it should be held liable to Chase. After a jury-waived trial, a Superior Court judge ruled for Paonessa on the basis of impossibility of performance.[2] Chase and Paonessa cross appealed. The Appeals Court affirmed, noting that the doctrine of frustration of purpose more accurately described the basis of the trial judge's decision than the doctrine of impossibility. *Chase Precast Corp.* v. *John J. Paonessa Co.*, 28 Mass. App. Ct. 639 (1990). We agree. We allowed Chase's application for further appellate review, and we now affirm.

The pertinent facts are as follows. In 1982, the Commonwealth, through the Department of Public Works (department), entered into two contracts with Paonessa for resurfacing and improvements to two stretches of Route 128. Part of each contract called for replacing a grass median strip between the north and southbound lanes with concrete surfacing and precast concrete median barriers. Paonessa entered into two contracts with Chase under which Chase was to supply, in the aggregate, 25,800 linear feet of concrete median barriers according to the specifications of the department for highway construction. The quantity and type of barriers to be supplied were specified in two purchase orders prepared by Chase.

---

[2] The judge also ruled that the Department of Public Works had the right to cancel the order for median barriers under its general contracts with Paonessa, particularly under subsection 4.06 of those contracts. See note 6, *infra.*

The highway reconstruction began in the spring of 1983. By late May, the department was receiving protests from angry residents who objected to use of the concrete median barriers and removal of the grass median strip. Paonessa and Chase became aware of the protest around June 1. On June 6, a group of about 100 citizens filed an action in the Superior Court to stop installation of the concrete median barriers and other aspects of the work. On June 7, anticipating modification by the department, Paonessa notified Chase by letter to stop producing concrete barriers for the projects. Chase did so upon receipt of the letter the following day. On June 17, the department and the citizens' group entered into a settlement which provided, in part, that no additional concrete median barriers would be installed. On June 23, the department deleted the permanent concrete median barriers item from its contracts with Paonessa.

Before stopping production on June 8, Chase had produced approximately one-half of the concrete median barriers called for by its contracts with Paonessa, and had delivered most of them to the construction sites. Paonessa paid Chase for all that it had produced, at the contract price. Chase suffered no out-of-pocket expense as a result of cancellation of the remaining portion of barriers.

This court has long recognized and applied the doctrine of impossibility as a defense to an action for breach of contract. See, e.g., *Boston Plate & Window Glass Co.* v. *John Bowen Co.*, 335 Mass. 697 (1957); *Baetjer* v. *New England Alcohol Co.*, 319 Mass. 592 (1946); *Butterfield* v. *Byron*, 153 Mass. 517 (1891). Under that doctrine, "where from the nature of the contract it appears that the parties must from the beginning have contemplated the continued existence of some particular specified thing as the foundation of what was to be done, then, in the absence of any warranty that the thing shall exist . . . the parties shall be excused . . . [when] performance becomes impossible from the accidental perishing of the thing without the fault of either party." *Boston Plate & Window Glass Co.*, *supra* at 700, quoting *Hawkes* v. *Kehoe*, 193 Mass. 419, 423 (1907).

On the other hand, although we have referred to the doctrine of frustration of purpose in a few decisions, we have never clearly defined it. See *Mishara Constr. Co.* v. *Transit-Mixed Concrete Corp.*, 365 Mass. 122, 128-129 (1974); *Essex-Lincoln Garage, Inc.* v. *Boston*, 342 Mass. 719, 721-722 (1961); *Baetjer* v. *New England Alcohol Co.*, *supra* at 602. Other jurisdictions have explained the doctrine as follows: when an event neither anticipated nor caused by either party, the risk of which was not allocated by the contract, destroys the object or purpose of the contract, thus destroying the value of performance, the parties are excused from further performance. See *Howard* v. *Nicholson*, 556 S.W.2d 477, 482 (Mo. Ct. App. 1977); *Perry* v. *Champlain Oil Co.*, 101 N.H. 97 (1957); *Lloyd* v. *Murphy*, 25 Cal. 2d 48 (1944).

In *Mishara Constr. Co.*, *supra* at 129, we called frustration of purpose a "companion rule" to the doctrine of impossibility. Both doctrines concern the effect of supervening circumstances upon the rights and duties of the parties. The difference lies in the effect of the supervening event. Under frustration, "[p]erformance remains possible but the expected value of performance to the party seeking to be excused has been destroyed by [the] fortuitous event . . . ."[3] *Lloyd* v. *Murphy*, *supra* at 53. The principal question in both kinds of cases remains "whether an unanticipated circumstance, the risk of which should not fairly be thrown on the promisor, has made performance vitally different from what was reasonably to be expected." See *Lloyd*, *supra* at 54 (frustration); *Mishara Constr. Co.*, *supra* at 129 (impossibility).

Since the two doctrines differ only in the effect of the fortuitous supervening event, it is appropriate to look to our

---

[3]Clearly frustration of purpose is a more accurate label for the defense argued in this case than impossibility of performance, since, as the Appeals Court pointed out, "[p]erformance was not literally impossible. Nothing prevented Paonessa from honoring its contract to purchase the remaining sections of median barrier, whether or not the [department] would approve their use in the road construction." 28 Mass. App. Ct. 639, 644 n.5 (1990).

cases dealing with impossibility for guidance in treating the issues that are the same in a frustration of purpose case.[4] The trial judge's findings with regard to those issues are no less pertinent to application of the frustration defense because they were considered relevant to the defense of impossibility.

Another definition of frustration of purpose is found in the Restatement (Second) of Contracts § 265 (1981):

> "Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary."

This definition is nearly identical to the defense of "commercial impracticability," found in the Uniform Commercial Code, G. L. c. 106, § 2-615 (1988 ed.),[5] which this court, in *Mishara Constr. Co., supra* at 127-128, held to be consistent with the common law of contracts regarding impossibility of performance. It follows, therefore, that the Restatement's formulation of the doctrine is consistent with this court's previous treatment of impossibility of performance and frustration of purpose.

Paonessa bore no responsibility for the department's elimination of the median barriers from the projects. Therefore, whether it can rely on the defense of frustration turns on

---

[4] Those issues include the foreseeability of the supervening event, allocation of the risk of occurrence of the event, and the degree of hardship to the promisor. Compare *Mishara Constr. Co., supra* at 128-130, and *Boston Plate & Window Glass Co., supra* at 700-701 with *Howard, supra* at 482-483, and *Perry, supra* at 98-100. See also 18 S. Williston, Contracts §§ 1935, 1954 (1978 & Supp. 1990).

[5] That section states that performance is excused when it has been made "impracticable by the occurrence of a contingency the non-occurrence of which was a basic assumption on which the contract was made." G. L. c. 106, § 2-615.

whether elimination of the barriers was a risk allocated by the contracts to Paonessa. *Mishara Constr. Co., supra* at 129, articulates the relevant test:

> "The question is, given the commercial circumstances in which the parties dealt: Was the contingency which developed one which the parties could reasonably be thought to have foreseen as a real possibility which could affect performance? Was it one of that variety of risks which the parties were tacitly assigning to the promisor by their failure to provide for it explicitly? If it was, performance will be required. If it could not be so considered, performance is excused."

This is a question for the trier of fact. *Id.* at 127, 130.

Paonessa's contracts with the department contained a standard provision allowing the department to eliminate items or portions of work found unnecessary.[6] The purchase order agreements between Chase and Paonessa do not contain a similar provision. This difference in the contracts does not mandate the conclusion that Paonessa assumed the risk of reduction in the quantity of the barriers. It is implicit in the judge's findings that Chase knew the barriers were for department projects. The record supports the conclusion that Chase was aware of the department's power to decrease quantities of contract items. The judge found that Chase had been a supplier of median barriers to the department in the

---

[6]The contracts contained the following provision:

"4.06 Increased or Decreased Contract Quantities.

"When the accepted quantities of work vary from the quantities in the bid schedule, the Contractor shall accept as payment in full, so far as contract items are concerned, payment at the original contract unit prices for the accepted quantities of work done.

"The Engineer may order omitted from the work any items or portions of work found unnecessary to the improvement and such omission shall not operate as a waiver of any condition of the Contract nor invalidate any of the provisions thereof, nor shall the Contractor have any claim for anticipated profit.

"No allowance will be made for any increased expenses, loss of expected reimbursement therefor or from any other cause."

past. The provision giving the department the power to elimi-
nate items or portions thereof was standard in its contracts.
See Standard Specifications for Highways and Bridges,
Commonwealth of Massachusetts Department of Public
Works § 4.06 (1973). The judge found that Chase had fur-
nished materials under and was familiar with the so-called
"Unit Price Philosophy" in the construction industry,
whereby contract items are paid for at the contract unit price
for the quantity of work actually accepted. Finally, the
judge's finding that "[a]ll parties were well aware that lost
profits were not an element of damage in either of the public
works projects in issue" further supports the conclusion that
Chase was aware of the department's power to decrease
quantities, since the term prohibiting claims for anticipated
profit is part of the same sentence in the standard provision
as that allowing the engineer to eliminate items or portions
of work.

In *Mishara Constr. Co., supra* at 130, we held that, al-
though labor disputes in general cannot be considered ex-
traordinary, whether the parties in a particular case intended
performance to be carried out, even in the face of a labor
difficulty, depends on the facts known to the parties at the
time of contracting with respect to the history of and pros-
pects for labor difficulties. In this case, even if the parties
were aware generally of the department's power to eliminate
contract items, the judge could reasonably have concluded
that they did not contemplate the cancellation for a major
portion of the project of such a widely used item as concrete
median barriers, and did not allocate the risk of such
cancellation.[7]

Our opinion in *Chicopee Concrete Serv., Inc. v. Hart
Eng'g Co.*, 398 Mass. 476 (1986), does not lead to a different
conclusion. Although we held there that a provision of a

---

[7]The judge did not explicitly find that cancellation of the barriers was
not contemplated and that the risk of their elimination was not allocated
by the contracts. However, the judge's decision imports every finding es-
sential to sustain it if there is evidence to support it. *Mailer v. Mailer*, 390
Mass. 371, 373 (1983).

prime contract requiring city approval of subcontractors was not incorporated by reference into the subcontract, *id.* at 478, we nevertheless stated that, if the record had supported the conclusion that the subcontractor knew, or at least had notice of, the approval clause, the result might have been different. *Id.* at 478-479.[8]

One additional matter requires comment. Chase argues that a decision of the Superior Court in an unrelated case, D. Cicconi, Inc. *vs.* Metropolitan Dist. Comm'n, Civ. No. 73271 (Super. Ct. Suffolk Co., July 3, 1987), either "states the law of this Commonwealth, or became the law of this case," for the following reasons:

> "At the trial, the [trial] court was provided a copy of the memorandum of decision in the Suffolk Superior Court action . . . . Counsel for the third-party defendant . . . argued only that the *D. Cicconi* case did not apply to this case and by clear inference conceded that the law set forth in the case was correct law . . . . There was no objection to the presentation of the *D. Cicconi* case

---

[8]This court held in *John Soley & Sons* v. *Jones*, 208 Mass. 561, 566-567 (1911), that, where by its terms the prime contract could be cancelled if the defendant was not making sufficient progress on the work, and the plaintiff knew of the article of cancellation, nevertheless, even if it was mutually understood that the defendant did not intend to perform unless the prime contract remained in force, the defendant was not relieved from performance on the ground of impossibility where it failed to provide for the risk of cancellation in its contract with the plaintiff. To the extent that holding is contrary to our decision in this case, we decline to follow it, and refer to our adoption in *Mishara Constr. Co., supra* at 130, of the following statement: "Rather than mechanically apply any fixed rule of law, where the parties themselves have not allocated responsibility, justice is better served by appraising all of the circumstances, the part the various parties played, and thereon determining liability," quoting *Badhwar* v. *Colorado Fuel & Iron Corp.*, 138 F. Supp. 595, 607 (S.D.N.Y. 1955), aff'd, 245 F.2d 903 (2d Cir. 1957). See *West Los Angeles Inst. for Cancer Research* v. *Mayer*, 366 F.2d 220, 225 (9th Cir. 1966), cert. denied, 385 U.S. 1010 (1967) ("foreseeability of the frustrating event is not alone enough to bar rescission if it appears that the parties did not intend the promisor to assume the risk of its occurrence").

to the court nor to the principles of law stated in *D. Cicconi . . . .*"

Chase claims that, because the D. Cicconi, Inc., decision has become the law of this case, the judge erred when he found that case not to affect his decision.

One of the definitions of the doctrine of "the law of the case" is set out, as follows, in *Dalton v. Post Publishing Co.,* 328 Mass. 595, 599 (1952), which Chase cites in support of its argument:

> "Where a party causes the judge to understand that certain facts are admitted or that certain issues are waived or abandoned he cannot object to the judge's conducting the trial on the basis of that understanding. . . . A statement of the judge during the trial as to the issues being tried or as to his understanding of those issues is binding on us where nothing is said by counsel to correct such understanding . . . or where the record does not disclose that the judge was in error. It becomes the law of the trial." (Citations omitted.)

That the defendant did not object to the routine practice of a party's drawing the judge's attention to a decision of another judge does not amount to a waiver of any issues by the defendant, nor to a statement by the judge as to the issues being tried.

The other principal definition of "the law of the case" states: "Where there has been no change of circumstances, a court or judge is not bound to reconsider a case, an issue, or a question or fact of law [in the same case], once decided." *Peterson v. Hopson,* 306 Mass. 597, 599 (1940). However applied, the law of the case doctrine does not bind an appellate court to a ruling of law made in a lower court in another case, even though that case may have been considered by the lower court judge who decided the case being appealed.

*Judgment affirmed.*