Fecteau, Francis R., J.

Introduction

This is an action for breach of contract between an individual, Harold Gurwitz (“Gurwitz") and a corporation, Mercantile/lmage Press, Inc. (“Mercantile”). Defendant Henry T. Michie (“Michie”) is a trustee of Image Realty Trust (“the Trust”). The dispute between the parties centers on a Stock Redemption Agreement and a Security Agreement (“the Agreement”) executed by Mercantile on January 1, 2002, the terms of which Gurwitz claims Mercantile breached. Mercantile has asserted impossibility, impracticability, and frustration of purpose as affirmative defenses to breach of contract. Gurwitz filed this motion for summary judgment on March 28, 2006. The defendants submitted opposition to the motion for summary judgment. For the following reasons, Gurwitz’s motion for summary judgment will be ALLOWED.

Background

The undisputed facts, viewed in the light most favorable to the non-moving party, are as follows. Mercantile and Gurwitz executed the Agreement, along with a Security Agreement granting Gurwitz a secured interest in the Trust’s property, on January 1, 2002. Under the terms of the Agreement, Mercantile agreed to pay $456,000.00 to Gurwitz in return for Gurwitz returning all his shares in the corporation, which constituted approximately 33% of the outstanding shares, and resigning his position as president of the corporation. The sum of money owed to Gurwitz was to be paid in monthly installments over a six-year period. Mercantile’s payment obligation is secured by a security interest in the company assets and in the company’s property located in West Boylston, which is owned by the Trust. Mercantile paid the first installment of $65,000.00, which was due on July 1, 2002, but failed to make any further payments to Gurwitz, as required by the Agreement. Following Mercantile’s default on the payments, Gurwitz accelerated the entire unpaid agreement pursuant to paragraphs four and five of the Agreement. Gurwitz’s attorneys sent demand letters to Mercantile, giving Mercantile notice of the default and requesting payment.
Gurwitz subsequently filed suit against Mercantile and Michie, claiming breach of contract and seeking $391,000.00, which represents the amount unpaid under the Agreement, plus interest and costs, including attorney fees. Mercantile has asserted that due to climactic changes in the printing industry following the advent of the internet, performance has become impossible or impracticable, and the purpose of the contract has been frustrated.
Gurwitz filed this motion for summary judgment, claiming that there are no outstanding issues of material fact, that Mercantile failed to properly plead impossibility as a defense, and that even if Mercantile did assert impossibility as a defense, the circumstances in this case do not support a finding of impossibility. Rather, Gurwitz claims that Mercantile is attempting to avoid its obligations under the Agreement due to a simple inability to pay, which is not a legal defense. In its opposition, Mercantile argues that the motion for summary judgment is premature, and the court should not entertain it until discovery is completed. In addition, Mercantile claims that there are multiple issues of material fact that should be resolved at trial, including whether the precipitous decline in the printing industry created a situation in which it became impossible or impracticable for Mercantile to perform under the terms of the Agreement, or substantially frustrated the purpose of the contract.
Discussion

Standard of Review

Summary judgment is granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat'l. Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears *85 the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motor Corp., 410 Mass. 706, 716 (1991).

Analysis Defenses of Impossibility, Impracticability, and Frustration of Purpose

Massachusetts courts have long recognized the doctrine of impossibility as a defense to breach of contract. Chase Precast v. John J. Paonessa Co., 409 Mass. 371, 373 (1991). For the defense of impossibility to succeed, “there must be an unanticipated circumstance which has made performance of the promise vitally different from what should have reasonably been contemplated by the parties.” Republic Floors v. Weston Racquet Club, 25 Mass.App.Ct. 479, 485 (1988) (quoting Mishara Constr. Co. v. Transit-Mixed Concrete Corp., 365 Mass. 122, 128 (1974) (internal quotations omitted). The type of circumstances envisioned by courts when applying the doctrine of impossibility generally involve extreme or unreasonable difficulty or expense that make it virtually, if not scientifically, impossible for a party to perform its obligations under a contract. Mishara, 365 Mass. at 128. “(I]t has long been assumed that circumstances drastically increasing the difficulty and expense of the contemplated performance may be within the compass of ‘impossibility.’ ” Id.
Here, the decline in the printing industry, while marked and unfortunate for Mercantile, was not the sort of unanticipated circumstance that falls within the purview of the doctrine of impossibility. Certainly, the climactic market change made it more difficult for Mercantile to perform its obligations under the Agreement, but economic downturns and other market shifts do not truly constitute unanticipated circumstances in a market-based economy. To find otherwise would extend the defense of impossibility to include any business that faces financial difficulty based on decreased demand for its products or services, and would allow businesses that have failed to anticipate or to protect themselves from market changes to avoid their obligations at the expense of innocent parties. As was expressed in the case involving the lease of a parking garage and a sudden change in a traffic pattern shortly thereafter that had a direct impact on its capacity for success:
Reasonable business prudence would have prompted the plaintiff to require that the lease contain a provision for its modification or its termination in the event the traffic pattern was changed if that had been the intention of the parties. See Hornblower v. Abbot, 252 Mass. 291, 297-98.
There is no reason to believe that an underlying implied condition was left unexpressed. The case in this aspect is governed by the principles stated in Gaston v. Gordon, 208 Mass. 265, 94 N.E. 307, and Imbeschied v. Lerner, 241 Mass. 199, 22 A.L.R. 819.
The trial judge’s conclusion that “the so called doctrine of frustration does not apply” was not erroneous as a matter of law but, to the contrary, is supported by the authorities. In Baetjer v. New England Alcohol Co., 319 Mass. 592, 602, it was said that “a contracting party cannot be excused [under the doctrine of frustration] where the only ‘frustration’ consists in the fact that known risks assumed by him have turned out to his disadvantage.”
Essex-Lincoln Garage, Inc. v. City of Boston, 342 Mass. 719 (Mass. 1961), at 721. Similarly, in the case of Imbeschied u. Lerner, cited above, the court affirmed a decision which denied the benefit of impossibility or frustration of performance to a party who had sought to rescind a lease of a premises for a liquor store in advance of the passage of the 18th Amendment, leading to the enactment of the Volstead Act which prohibited the sale and possession of alcoholic beverages. There, the court stated: “[I]f the defendant desired to have protected himself from liability to pay rent, a clause for that purpose should have been inserted in the lease.” Id. at p. 201. Although it leads to a harsh result, the case at bar is not viewed as significant different from the cited examples.
Mercantile’s situation is unfortunate, but, consistent with the concept of “reasonable business prudence” suggested in Essex-Lincoln Garage, Inc., supra, the defendants should have foreseen the possibility of change, and while the specific details of change might not be as foreseeable, its possibilify should have prompted the defendants to protect themselves by inclusion of a provision in the contract for its modification or its termination in the event of significant adverse impacts upon market conditions and/or the printing industry, technology-driven or otherwise.[2] “It is, of course, the very essence of contract that it is directed at the elimination of some risks for each party in exchange for others. Each receives the certainty of price, quantify, and time, and assumes the risk of changing market prices, superior opportunity, or added costs.” Mishara, 365 Mass. at 128. Gurwitz apparently anticipated the prospect that Mercantile would not be able to meet its payment obligations under the Agreement, and saw fit to protect his interests by obtaining a secured interest in the Trust’s property. Mercantile could have similarly protected its own interests at the time of contracting, but since it *86 did not, it effectively assumed the risk that the printing industry would suffer from an economic downturn.
Mercantile also invokes frustration of purpose, a “companion rule” to the doctrine of impossibility. Chase Precast, 409 Mass. at 374. Both doctrines involve the impact of unanticipated occurrences on the rights and duties of the parties to a contract. However, frustration of purpose may be distinguished in that “performance remains possible but the expected value of performance to the party seeking to be excused has been destroyed by the fortuitous event.” Id. (quoting Lloyd v. Murphy, 25 Cal.2d 48, 53 (1944) (internal quotations omitted). The relevant standard for determining whether the doctrine of frustration of purpose applies is “nearly identical” to the Uniform Commercial Code defense of commercial impracticability. Id. at 375; see Uniform Commercial Code, G.L.c. 106, § 2-615.
The question is, given the commercial circumstances in which the parties dealt: Was the contingency which developed one which the parties could reasonably be thought to have foreseen as a real possibility which could affect performance? Was it one of that variety of risks for which the parties were tacitly assigning to the promisor by their failure to provide for it explicitly? If it was, performance will be required. If it could not be so considered, performance is excused.
Id. at 376 (quoting Mishara. 365 Mass, at 129).
The doctrine of frustration of purpose, then, does not provide any additional support to Mercantile’s assertions that it should be excused from performance under the Agreement. Market shifts and changes are foreseeable, even if the specific reason for an economic downturn in a particular industry, such as the advent of the internet, is not. When a company such as this one signs an Agreement redeeming corporate shares, it assumes the risk that if the business climate changes, it may become more difficult to pay the amount owed to the shareholder. In the absence of an explicit provision to the contrary, it can be assumed that the risk of market changes, whether positive or negative, was assigned to Mercantile.
The value of Gurwitz’s performance was also not rendered worthless by the negative business climate that Mercantile was operating in after the Agreement was signed. Mercantile received the benefit of Gurwitz’s 33% stake in the company, and Gurwitz resigned as president of the corporation. The purpose of the Agreement was not vitiated, and the subject matter of the Agreement was not destroyed. Therefore, the defenses of impossibility and frustration of purpose are not applicable to Mercantile as a matter of law.

ORDER

For the foregoing reasons, Gurwitz’s motion for summaiy judgment is ALLOWED.

Moreover, the defendants can protect themselves by filing for bankruptcy after the fact.