Gordon, Robert B., J.
The plaintiff, Fargo Management, LLC (“Fargo”), has brought suit against the defendant, City of Worcester, Massachusetts (“Worcester” or the “City”), alleging material breach of the Land Disposition and Development Agreement entered into by the parties on June 3, 2003 for the acquisition of certain land and the development thereof. It is undisputed that Worcester did not commence construction of a contractually required skywalk between the Worcester Center Boulevard Parking Garage and the Hilton Garden Inn Hotel, which is owned by Fargo. Fargo now moves for summary judgment as to liability on the sole count in its Complaint for material breach of contract, on the ground that Worcester has conceded its failure to construct the skywalk by October 13, 2006—the date that Fargo was issued a certificate of use and occupancy for its hotel. For its part, Worcester asserts that Fargo’s contract is void for lack of an appropriation certification under G.L.c. 44, §31C, and that in all events its non-construction of the subject skywalk was excused on grounds of frustration of purpose and commercial impracticability/impossibility. Worcester additionally defends Fargo’s contract action, and moves for summary judgment in its favor on the sole contract count of the Counterclaim, on the ground that Fargo materially breached the agreement by withholding payment (beginning in April 2007) for contractually reserved parking spaces for Fargo’s hotel and restaurant guests in the Worcester Center Boulevard Parking Garage.
BACKGROUND
The evidence, as revealed by the summary judgment record, establishes the following.[1]
On June 3, 2003, Worcester and Fargo entered into a Land Disposition and Development Agreement (the “LDDA” or the “Agreement”), whereby Worcester agreed to convey to Fargo a parcel of land located at 35 Worcester Center Boulevard for $1,000,000 as part of a planned development project. The Agreement required Fargo to construct a hotel on the conveyed property. In December 2004, the parties executed “Amendment Number One” to the LDDA (the “LDDA Amendment”), which called upon Worcester to construct an elevated pedestrian walkway (the “Skywalk”) connecting the forthcoming Hilton Garden Inn Hotel (the “Hotel”) with the adjacent Worcester Center Boulevard Parking Garage (the “Garage”) and Worcester Convention Center Facilily. Pursuant to the express terms of the LDDA Amendment, construction of the Skywalk was due for completion by the time the Hotel was complete and the project architect had applied for its first certificate of use and occupancy. The agreement to construct the Skywalk thus provides in pertinent part as follows:
(c) Slqjwalk Agreement Worcester shall construct an elevated pedestrian walkway (“Skywalk”) connecting the [hotel] to both the Worcester Center Boulevard Parking Garage and the Convention Center Facilily under the following terms and conditions:
(2) Fargo shall contribute $625,000 to Worcester for the construction of the Skywalk;
(3) Fargo shall cause the footing for the Skywalk to be constructed in the area shown on the Plan as the Skywalk Easement Area under the contract it issues for the construction of the Hotel;
(4) The amount expended by Fargo for the construction of said footing shall be credited against the $625,000 due Worcester under this subsection;
(5) Worcester shall include in the Skywalk construction plans a connection between the Skywalk and the building to be constructed by Fargo on the Property and that [sic] such work will be performed by the general contractor selected by Worcester to construct the Skywalk;
(6) Worcester shall complete construction of the Skywalk at or before the date upon which the project architect for the Hotel applies for the first certificate of use and occupancy.
(Ex. 3, at 2.)
A separate part of the LDDA Amendment, the “Parking Agreement,” provides that Worcester will guarantee a number of parking spaces in the Garage for guests and patrons of the Hotel and its restaurants. Under the Parking Agreement, Worcester reserves (and Fargo commits to pay for) 200 parking spaces at a rate of $65 per space per day commencing upon completion and opening of the Hotel. Additionally, Worcester keeps available for day-to-day reservation an additional 100 parking spaces at a rate of $6 per vehicle per overnight parking in these preferred spaces. (Id. at 3.)
The LDDA and LDDA Amendment did not fix the cost of construction for the Skywalk or expressly provide for a source of funding. Rather, as evidenced by deposition testimony from Worcester City Manager Michael O’Brien, a number of financial sources for the development project were identified, most notably, a loan guarantee of $5,125,000 appropriated by the Worcester City Council from the “DCU Special District Improvements” account, which was created “for the purpose of making improvements to the DCU Arena and Convention Center.” Other sources of revenue identified to fund the Skywalk’s construction included a $1,875,000 loan guarantee supported by bonds based on anticipated parking garage revenues; $1,260,000 from the DCU Naming Rights Fund; and *67 a contractually required $625,000 cash contribution for the Skywalk from Fargo.
Construction for the Skywalk was first put out to bid in 2005, following a professional estimate that totaled $4,065,202. In 2005, two companies bid on this piece of the project; and their bids came in at $6,507,000 and $7,488,277, respectively. The parties do not dispute that the primaiy cause of the delta between the original estimate and the bids received was an intervening increase in the cost of steel. On October 10, 2006, construction of the Hotel was completed on Worcester Center Boulevard, and a certificate of use and occupancy issued to it on October 13, 2006. The Hotel opened for operation beginning on October 17, 2006. Construction on the Skywalk, however, had not even begun. As agreed, Fargo had included in its construction of the Hotel the footing required for the Skywalk. Worcester’s project consultant assessed the cost to construct the footing at $200,000[2] which was to be credited against Fargo’s contractually required contribution to the Skywalk of $625,000.
In 2007, the Skywalk project was redesigned (to reduce construction costs) and rebid, with the two lowest bids returning at $7,975,000 and $8,251,000, respectively. Once again, the received bids were substantially higher than the estimated construction costs for the Skywalk, which after re-design were estimated at $6,400,000. The failure to begin construction on the Skywalk prompted Fargo, in April 2007, to cease further payment for the guaranteed and preferred parking spaces in the adjacent Garage. Thereafter, in May 2007, Worcester City Manager Michael O’Brien wrote to the Worcester City Council, informing the Council of his decision to discontinue the Skywalk’s construction due to its high costs, and suggesting that Worcester reallocate the appropriated funds to other uses.
DISCUSSION
I. Standard of Review
Summaiy judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute of material fact and the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). The moving party has the burden of affirmatively demonstrating that no genuine issue of material fact exists, and “all doubts as to the existence of a genuine issue of material fact” are resolved in favor of the non-moving party. Kitras v. Zoning Adm’r of Aquinnah, 453 Mass. 245, 251 (2009). If the moving party meets this burden, the burden shifts to the non-moving party to demonstrate, through admissible evidence, an issue of material fact. Godbout v. Cousens, 396 Mass. 254, 261 (1985).
II. Fargo’s Motion for Summary Judgment
Fargo has moved for summary judgment on liability, alleging that Worcester materially breached the LDDA and LDDA Amendment by failing to construct the Skywalk by October 2006—the date when the Hotel first opened for business and the certificate of use and occupancy had issued. The undisputed facts, even construed generously in favor of the defendant, make clear that Worcester failed to have the Skywalk constructed by the issuance of the Hotel’s certificate of use and occupancy. Worcester argues, however, that Fargo is not entitled to summaiy judgment for each of three reasons. As a threshold matter, Worcester maintains that the Cfiy’s failure to obtain a signed, authenticated certificate acknowledging the availability of appropriated funds for the project, in accordance with G.L.c. 44, §31C, invalidates the contract and renders it unenforceable as a matter of law. Alternatively, Worcester alleges that the dramatic spike in the cost of steel was not contemplated by the parties, a fact excusing its performance under the contract pursuant to the common-law doctrines of “frustration of purpose,” “commercial impracticability,” and “impossibility.” Finally, Worcester asserts that Fargo failed to satisfy a condition precedent, or materially breached the contract, when it refused to make its full $625,000 contribution toward construction of the Skywalk, a breach independently excusing Worcester from its corresponding obligations under the bargain.
1. Certification of the Availability of Funds
Opposing the plaintiffs motion for summaiy judgment as to its liability, Worcester argues that Fargo’s failure to obtain a certificate pursuant to G.L.c. 44, §31C (acknowledging that Worcester had made funds available by appropriation for such project) renders the contract void as a matter of law. Fargo, however, contends that G.L.c. 44, §31C does not apply to the contract, because the LDDA and the LDDA Amendment are development agreements rather than contracts for public construction. The Court agrees that G.L.c. 44, §31C is inapplicable, and that the failure to certify in this case does not invalidate the LDDA Amendment.
It is acknowledged that “[p]ersons dealing with a municipality must take notice of limitations . . . upon the contracting power of the municipality and are bound by them and cannot recover upon contracts attempted to be made in violation of them.” Marlborough v. Cybulski, Ohnemus & Assocs., Inc., 370 Mass. 157, 160 (1976) (quotations and citation omitted). Massachusetts courts have thus typically required strict compliance with the preconditions outlined in G.L.c. 44, §31 for public construction contracts, noting the importance of setting “rigid barriers against expenditures in excess of appropriations.” Lawrence v. Falzarano, 380 Mass. 18, 24 (1980) (quotations and citation omitted). The SJC, however, has been less exacting insofar as concerns the effect of a failure to comply with G.L.c. 44, §31C on contracts between a municipality and a private contractor. See infra.
General Laws c. 44, §31C provides, in pertinent part, as follows:
*68 No contract for the construction, reconstruction, alteration, remodeling, repair or demolition of any public building or public work by any city or tpwn costing more than two thousand dollars shall be deemed to have been made until the auditor or accountant or other officer of the city or town having similar duties has certified thereon that an appropriation in the amount of such contract is available . . .
(2012) (emphasis added). The legislative purpose of the certification requirement is to “provide contractors engaged in public construction work with a ready and reliable means of ascertaining that there is an appropriation sufficient to cover the proposed work and to protect them where the contract carries a certification that there exists a sufficient appropriation, but no such appropriation exists.” Reynolds Bros., Inc. v. Norwood, 414 Mass. 295, 300-01 (1993); Falzarano, 380 Mass. at 25 (quotation omitted).
It is the Court’s view that the venture between Worcester and Fargo to develop a Hotel and Skywalk on theretofore public land is a development contract, rather than one “for the construction, reconstruction, alteration, remodeling, repair or demolition of any public building or public work.” G.L.c. 44, §31C. Basic principles of statutory construction require the Court to look primarily to the statute itself to determine its legislative intent based upon the usual and plain meaning of its terms. Klein v. Catalano, 386 Mass. 701, 705 (1982). Although the LDDA Amendment included a provision for construction of the Skywalk, Fargo was not responsible for such construction nor was it the contractor charged with arranging sub-contractors to complete the Skywalk. Rather, the Skywalk was to be constructed by contractors hired by Worcester and operating entirely independent of Fargo. In these circumstances, the contractor-protective purposes of G.L.c. 44, §31C do not appear to be implicated in the contract entered into between Worcester and Fargo. Moreover, Michael O’Brien, Worcester’s own City Manager, conceded during deposition that the LDDA Amendment was an agreement ancillary to a greater development project, and that §31C certification would not be needed for the LDDA Amendment itself but would be for any implementing contracts entered into thereafter for the actual construction of the Skywalk. (See Dep. Tr. of Michael O’Brien, Ex. 10, at 75.)
The purpose of G.L.c. 44, §31C, as explained by the SJC in Reynolds and Falzarano, is to protect a contractor from reliance on the misguided assertions by a municipality that funding is available for the contractor’s performance. The statute thus requires a funding certification from an authorized municipal officer, the existence of which effectively estops a city or town from reneging on a construction commitment because funds were not in fact secured. This situation is not present here. Fargo is not charged with building, seeking bids for, or sub-contracting out the construction of the subject Skywalk. It is, therefore, not a protection-needing contractor for purposes of this provision. The Court also observes that, in the development context, the nature of the contract in issue is ill suited to the natural application of G.L.c. 44, §31C. This is because it is unlikely that the costs of future construction based upon a bidding process that has not commenced will have fixed or even knowable costs. At the time of the LDDA Amendment’s execution, the cost of the Skywalk was altogether conjectural, meaning that there was no practical or reliable way for the City to certify a secured appropriation for a particular amount of money. Applying the statute to an agreement of this nature—that is, a contract with understood developmental objectives but without a known pricetag—would unfairly give municipalities an exit ramp from every contract contemplating future construction. This follows because forward-looking construction costs will often be unascertainable (and thus potentially in excess of the appropriations available) at the time of contracting. Such application of the law turns a statute designed to promote certainty and stability in public contracting into a vehicle for generating precisely the opposite result.
Even assuming, however, that G.L.c. 44, §31C could be applied to the LDDA Amendment, the failure to comply with its requirements would not be fatal to the validity of the agreement itself. This is because the contract was entered into by an authorized agent of Worcester, and sufficient funds were identified to finance the cost of the Skywalk’s estimated construction at the time of contracting. See Falzarano, 380 Mass, at 25 (explaining that legislative purpose of G.L.c. 44, §31C warrants less exacting standard than strict compliance where such compliance would reward municipality for its own lapse and frustrate the protections intended for a contractor). Interpreting G.L.c. 44, §31C, the SJC has held that “where it is unquestioned that the contract was executed by a proper city official and that a sufficient appropriation existed in fact to cover the cost of the contract. . . the contract is not necessarily invalid because it lacks on its face the certification required.” Bradston Assocs., LLC v. Suffolk County Sheriffs Dep’t, 452 Mass. 275, 280 (2008) (enforcing contract notwithstanding invalid certification, because evidence demonstrated sufficient funds had been appropriated to cover the contract amount) (emphasis added) (citation omitted).
In Falzarano, the plaintiff-contractor entered into an agreement with the City of Lawrence to perform major renovations to a public hospital. The contract amount, however, was never certified pursuant to G.L.c. 44, §31C. Awaiting further approval, the plaintiff-contractor entered into several contracts with subcontractors, and brought suit for reliance damages against the city after the project proposal was rejected by the Department of Health. The City of Lawrence asserted invalidity of contract based on G.L.c. 44, §31C, but the Court disagreed. Relying on the fact that *69 the city had previously appropriated $1,500,000—an amount above the contract price—the Court noted, “[w]hile strict compliance with the statute is preferable, a contrary result... would allow the ci1y to benefit from its omission, which would conflict with the statutory policy [of protecting contractors].” Id. at 25; see also Reynolds Bros., 414 Mass, at 300-01 (enforcing contract for airport renovation between plaintiff-contractor and City of Norwood notwithstanding absence of §31C certification where Norwood had appropriated funding for project).
Here, it is undisputed that the Worcester City Council approved a loan guarantee from the “DCU Special District Improvements” account for $5,125,000 to fund the Skywalk’s construction. Furthermore, the project was set to receive an additional $1,875,000 loan guarantee supported by bonds from parking garage revenues; $1,260,000 from the DCU Naming Rights Fund; and a $625,000 contribution to the Skywalk’s construction from Fargo. After Fargo and Worcester entered into the agreement, the estimate they received on the cost for construction was $4,065,202. Although the ensuing bids returned by contractors unaffiliated with and independent of Fargo were higher than this amount, Worcester nonetheless had sufficient funds from all sources to cover the cost of construction based on the Skywalk’s estimated cost after its redesign ($6.4 million). In these circumstances, Falzarano suggests that allowing Worcester to evade its contractual commitment for lack of an appropriations certification would be contrary to the legislative intentions underlying §31C.
The failure to comply strictly with G.L.c. 44, §31C has defeated contract enforcement in only very limited circumstances where no appropriation in fact has been made. See, e.g., Ryan v. Somerville, 328 Mass. 324, 325 (1952) (invalidating contract for failure to comply with §31C certification requirement because there was no finding that City of Somerville appropriated any funds to finance a five-year contract for garbage collection); Knott v. Inhabitants of Northbridge, 2005 Mass.Super. LEXIS 175 at *10 (2005) (invalidating agreement to reimburse plaintiff for relocation of water pipe absent §31C certification because reference to defendant’s general appropriations fund not sufficient showing of funds available for construction); Barletta Co. v. Leominster, 1993 Mass.Super. LEXIS 290 at *9 (1993) (‘The absence of both an appropriation and a certification serves to defeat [plaintiffs] contract claim”) (emphasis added). Although the parties dispute whether the amount set aside will cover the actual cost of construction based on returned bids from independent contractors, the Worcester City Council undeniably did set aside $5,125,000 in loan guarantees (among other sources of funding). Therefore, consistent with the foregoing authorities, the project agreement between Fargo and Worcester is enforceable, even absent a §31C certification, because Worcester has appropriated funds for the Skywalk’s construction.
2. Impossibility, Commercial Impracticability, and Frustration of Purpose
Alternatively, Worcester argues against Fargo’s motion on the ground that, even if the contract is valid, construction of the Skywalk is excused as a matter of law under the common-law doctrines of impossibility, commercial impracticability, and frustration of purpose. The basis for Worcester’s contention is that, at the time the contract was entered into, the parties did not foresee that the price of steel would increase from an estimated cost of $7,000 per square foot in 2005 to an actual cost of $12,000 per square foot in 2007—the time when bids were returned after the Skywalk’s re-design. The Court does not agree. Fluctuation in the market price of construction materials over the course of two years is a risk inherent in any development contract, and even large cost increases of this nature do not rise to the level of substantial, unanticipated circumstances such as will excuse contract performance.
Massachusetts does, of course, recognize the doctrines of impossibility, commercial impracticability and frustration of purpose as valid defenses to an action for breach of contract. Chase Precast Corp. v. John J. Paonessa Co., 409 Mass. 371, 373-75 (1991). None, however, apply in the circumstances of this case. Impossibility is a valid excuse “where from the nature of the contract it appears that the parties must from the beginning have contemplated the continued existence of some particular specified thing as the foundation of what was to be done . . . [and] performance becomes impossible from the accidental perishing of the thing without the fault of either party.” Id. at 373 (citations omitted). The doctrine of impossibility so outlined will not avail to Worcester in this case. Although the rising price of steel surely complicated Worcester’s ability to secure sufficient funding to absorb the increased cost of the Skywalk, its construction was not impossible. See id. at 374, n.3 (“Clearly frustration of purpose is a more accurate label for the defense argued in this case than impossibility of performance, since . . . ‘[p]erformanee was not literally impossible. Nothing prevented [defendant] from honoring its contract to purchase . . .’ ”) (quotation and citation omitted). Michael O’Brien himself, in his letter to the Worcester City Council, explained that the decision to renege on the LDDA Amendment “must not be viewed as anything other than a tough business decision made for all the right reasons.” (Ex. 5, at 2.) Furthermore, at the time of his decision to halt further progress on the Skywalk, Mr. O’Brien expected to continue working with Fargo to develop a scaled-back version of the structure. (Id.) Although the increased cost of constructing the Skywalk was certainly unexpected and Worcester obviously felt the money could be better spent on other development projects, the *70 Skywalk’s construction was by no means impossible. Indeed, fulfilling its own commitment under the Agreement, Fargo constructed a 200-room Hotel adjacent to the Garage—a project likewise requiring large amounts steel that cost a good deal more than had been budgeted.
A closer question is presented under the doctrine of frustration of purpose.[3] Massachusetts has adopted the Restatement’s formulation of the doctrine, as follows:
Where, after a contract is made, a party’s principal purpose is substantially frustrated without his fault lay the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.
Restatement (Second) of Contracts §265 (1981); see also Chase Precast, 409 Mass. at 375 (“the Restatement’s formulation of the doctrine is consistent with [the Supreme Judicial Court’s] previous treatment of impossibility of performance and frustration of purpose”). Distinguished from the doctrine of impossibility, performance remains possible “but the expected value of performance to the parly seeking to be excused has been destroyed by [a] fortuitous event.” Chase Precast, 409 Mass, at 374 (citation omitted). Although there are always risks borne by contracting parties, it is “implicit in the doctrine... that certain risks are so unusual and have such severe consequences that they must have been beyond the scope of the assignment of risks inherent in the contract, that is, beyond the agreement made by the parties.” Mishara Constr. Co. v. Transit-Mixed Concrete Corp., 365 Mass. 122, 128-29 (1974). The question of whether frustration of purpose will excuse idle promisor to a contract given the commercial circumstances that obtain is one of reasonable foreseeability. That is, was the risk sufficiently foreseeable that it must be deemed to have been impliedly assigned to the promisor by the parties’ failure to provide for its allocation expressly in the contract? Chase Precast, 409 Mass, at 376.
In the present case, even substantial fluctuation in the price of steel cannot be considered a remote contingency whose occurrence was beyond contemplation, thereby excusing Worcester’s performance under the LDDA Amendment. “It is, of course, the very essence of contract that it is directed at the elimination of some risks for each party in exchange for others.” Mishara Constr., 365 Mass, at 128. In bilateral contracts, parties will receive certainty as to price, quantity, time, and other essential terms; but they necessarily assume the risks inherent in the making of such commitments, including those associated with changes in market prices and other costs of performance. Id. Unchanging prices and other cost-impacting conditions cannot realistically be considered implied assumptions of contracts at the time of execution, and, therefore, performance on a contract will not be excused under the doctrine of frustration of purpose merely because prices have fluctuated. See 6 A. Corbin, Contracts §1350 (1962) (“Insurance rates go up, the cost of labor and materials rises, routes of shipment may have to be changed—these risks are on the promisor”) (emphasis added); S. Williston, Contracts §77:46 (4th ed. 2004) (noting that performance is not excused when the difficulty of performance is occasioned by financial challenges or economic hardship).
The potential increase in the price of steel, an international commodity, was an inherent risk of the LDDA Amendment, particularly in light of the fact that the construction cost of the Skywalkwas nowhere assigned or fixed. The rise in cost of raw materials needed by one party for its performance simply cannot be deemed to be so unusual, nor the economic consequences of the same so severe, as to lie beyond the parties’ contemplation at the time they struck their bargain. Mishara Construction, 365 Mass. at 129. See also Peerless Cas. Co. v. Weymouth Gardens, Inc., 215 F.3d 362, 364 (1st Cir. 1954) (holding that even where an unexpected outbreak of war leads to an increase in costs or disappearance of raw materials, such event will not excuse party’s obligation under contract); Wagner & Wagner Auto Sales, Inc. v. Land Rover N.Am., Inc., 539 F.Sup.2d 461, 472 (D.Mass. 2008) (“economic downturns and market shifts are not the type of risks that are so unusual and have such severe consequences that they must have been beyond the assignment of risks inherent in the contract”) (quotation omitted).
In the present case, Worcester chose not to include in the LDDA Amendment any provision to protect itself from unanticipated cost increases, such as a price collar, cost reallocation mechanism, or a conditional walk-away right triggered by this sort of eventuality. Eschewing such commonplace transactional hedges, Worcester made an unqualified contractual commitment. Nothing in either common law or common sense counsels in favor of allowing it to repudiate this commitment with impunity.
3. Condition Precedent and Material Breach of Contract
Finally, Worcester argues that it should be excused from performance under the LDDA, because Fargo failed to make required payment of either the full $625,000 contribution for the Skywalk’s construction or full payment for the reserved parking spaces in the Garage. Worcester characterizes these lapses as failures of a condition precedent that excuse its own contractual performance. In the alternative, Worcester contends that Fargo materially breached the contract by failing to make the full financial contribution and by ceasing payment for the parking spaces, such breaches excusing Worcester from its corresponding obligation under the contract. The Court disagrees with both contentions. The contribution and payment for parking spaces were not contractual conditions precedent. More to the point, Fargo did not materially breach the LDDA Amendment, both because its failure to make the referenced contribution was not material *71 and because it only discontinued payments on the reserved parking spaces in the Garage after Worcester materially breached the LDDA Amendment by refusing to construct the Skywalk.
Conditions Precedent
The defendant argues that there were two required conditions precedent to be fulfilled prior to construction of the Skywalk: (1) Fargo’s $625,000 cash contribution to Worcester; and (2) Fargo’s continued payment for reserved parking spaces in the Garage owned and managed by Worcester. The Court finds that these two contractual covenants were in the nature of executory promises, but were not conditions precedent whose non-fulfillment will excuse Worcester’s obligation to perform under the Agreement.
A condition precedent defines an event which must occur before a contract or obligation thereunder becomes effective. Massachusetts Mun. Wholesale Electric Co. v. Danvers, 411 Mass. 39, 45 (1991). If the condition is not fulfilled, any obligations to perform attached to the condition are excused. Id. To ascertain the existence of a condition precedent, courts will look to the words used by the parties, the agreement in its entirety, and all surrounding facts and circumstances. Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 420 (2005). Such determination is a matter of law for the Court. See Shaw v. Commercial Ins. Co., 359 Mass. 601, 605 (1971).
As noted ante, it is undisputed that Fargo failed to make its full contribution of $625,000 toward the Skywalk’s construction.[4] However, there is nothing in the LDDA Amendment suggesting that this contribution was a condition precedent to Worcester’s obligation to build the Skywalk. The words used in an agreement are significant in determining whether a promise constitutes a condition precedent. “Emphatic words” are generally considered necessary to create a condition precedent, the failure of which will limit or forfeit rights under an agreement. Massachusetts Mun. Wholesale Electric, 411 Mass, at 46; see also Charles, Henry & Crowley Co. v. Home Ins. Co., 349 Mass. 723, 726 (1965) (noting creation of a condition precedent requires language such as “condition precedent" or its equivalent); Canton v. Thomas, 264 Mass. 457, 459 (1928) (“A condition . . . would be expressed if the words ‘if and when...’ had been used in the contract here in issue in place of the word[ ] “when . . .’ ”). The clear absence of ‘emphatic words’ from the LDDA Amendment regarding the Skywalk belies any notion that Fargo’s financial contribution was a condition precedent to the Skywalk’s construction. All the agreement called for was that “Fargo shall contribute $625,000 to Worcester for the construction of the Skywalk.” There are no words expressing that Skywalk construction was conditioned or contingent upon Fargo’s prior payment.
Language aside, the agreement interpreted as a whole does not suggest that the parties intended that Fargo’s financial contribution be made prior to commencement of the Skywalk’s construction. The LDDA Amendment required that Fargo “cause footing for the Skywalk to be constructed . . . under the contract it issues for the construction of the Hotel,” the value of which would be credited against Fargo’s required $625,000 contribution. This condition was met. Under the structure of the LDDA Amendment, construction began on the Skywalk while the Hotel was being built. The LDDA Amendment could not have contemplated that the contribution necessarily be paid to Worcester prior to commencing the Skywalk’s construction, because the cost of construction borne by Fargo in respect to the Skywalk’s footing is credited against the total amount owed on Fargo’s contribution. If payment of the total $625,000 were a condition precedent to the Skywalk’s construction, there would be no need to provide for a credit on account of the cost of the footing. The construction so sequenced, Worcester would simply have paid for the footing itself. Thus, contrary to Worcester’s contention, the parties appear to have envisioned precisely the reverse order of events—Skywalk construction to commence prior to the financial contribution therefor from Fargo.
The Court need not reach the question of whether Fargo’s continued payment of the reserved Garage parking spaces was a condition precedent to the construction of the Skywalk, because it is undisputed that payment did not cease until April 2007—several months after Worcester breached the agreement to construct the Skywalk. There is no evidence that Fargo failed to meet its obligation to pay for reserved parking spaces prior to Worcester’s breach. Indeed, all evidence appears otherwise.
Breach of Contract
Alternatively, the defendant argues that Fargo’s failure to pay its $625,000 contribution and back payment of reserved parking spaces after April 2007 precludes recovery on the contract, because such lapses were material breaches of the contract. The Court does not agree. Even if Fargo breached the LDDA by not paying the contribution in full,[5] any such breach was immaterial and did not excuse Worcester from performance.
It is well settled that a material breach by one party excuses the other parly from further performance obligations under the contract. Prozinski v. Northeast Reg’l Estate Servs., 59 Mass.App.Ct. 599, 610 (2003). Massachusetts courts define a material breach as “a breach of an essential and inducing feature of the contract.” Id. at 608 (quotation omitted). Courts look to the following factors to determine materiality: (1) the extent to which the injured party will be deprived of its anticipated benefit; (2) the adequacy of compensation to the injured party in the case of breach; (3) the extent to which forfeiture by the injured party will impact the breaching party; (4) the likelihood of cure, taking into account the surrounding circumstances and assur- *72 anees; and (5) whether the breaching party acted in accordance with principles of good faith and fair dealing. See Restatement (Second) of Contracts §241 (1981).
Construing the evidence most favorably to Worcester and thus assuming Fargo to have been in breach of contract at the time of Worcester’s failure to construct the Skywalk by the agreed-upon deadline, the breach was immaterial and did not excuse Worcester from constructing the Skywalk. The factors bearing upon materiality recited above tilt sharply in favor of Fargo. There was no substantial injury to Worcester at the time the Hotel opened for business, and Worcester was deprived of no meaningful benefit. At the time the Skywalk was to be completed, Worcester was still soliciting bids; and there is nothing in the events that transpired to indicate that the reason Worcester rejected its latest bids had anything to do with Fargo’s failure to make all of its required financial contribution. Indeed, Worcester never even demanded further contribution from Fargo during its bidding process, and never notified Fargo of its alleged breach.
In point of fact, Fargo bears the brunt of the injury occasioned by Worcester’s conduct. At the time of Worcester’s breach, Fargo had built the footing for the Skywalk as part of the Hotel’s construction. Furthermore, since the Hotel’s opening in 2006, Fargo has lost out on any added value that a Skywalk connecting the Hotel with its parking facility would have brought. Additionally, the likelihood of cure is high in this case, in light of the fact that Fargo is seeking specific performance as its remedy. If specific performance is ordered, Fargo will be expected to make the agreed $625,000 contribution and pay over any other money owed under the LDDA Amendment. If damages are awarded, Fargo’s outstanding financial obligation will be assessed as an offset. Finally, there is no indication that Fargo ever acted in bad faith. To the contrary, City Manager Michael O’Brien stated in his letter to the Worcester City Council announcing his decision to halt the Skywalk’s construction that Fargo “has been more than supporting, both financially and operationally, in the pursuit of the originally proposed Skywalk.” For all these reasons, Fargo’s contribution to the Skywalk’s construction was not an “essential and inducing” term in the LDDA Amendment, and, therefore, Fargo’s claimed breach cannot be considered either material or a legal excuse for Worcester’s non-performance.
III. Worcester’s Cross Motion for Summary Judgment
Defendant also moves for summary judgment on its sole counterclaim, alleging that Fargo is liable for breach of contract by failing to make payments after April 2007 for the contractually reserved parking spaces. However, as set forth ante, a material breach by one contracting party will excuse the other party from further obligations under the agreement. See Prozinski, 59 Mass.App.Ct. at 610. Because the Court finds that Worcester was not excused from fulfilling its obligations under the LDDA Amendment as to the Skywalk’s construction, its failure to honor this commitment constituted a material breach of contract. Thus, Fargo is relieved from any further performance under the contract. Worcester breached the LDDA Amendment in October 2006 when Fargo opened its Hotel and was issued a certificate of use and occupancy, such date marking the deadline for the Skywalk’s completion. Fargo did not cease payment on the reserved parking spaces until April 2007, an action legally authorized by Worcester’s prior material breach of the LDDA Amendment. This is not to say that Fargo’s recovery will not be offset by the benefit conferred by its unpaid-for access to the parking spaces since that time; but it does mean that Worcester is not entitled to summary judgment on its counterclaim against Fargo.
CONCLUSION AND ORDER
In accordance with the foregoing discussion, Plaintiff Fargo Management, LLC’s Motion for Summary Judgment as to liability is ALLOWED. Defendant City of Worcester’s Motion for Summary Judgment is DENIED.

 The facts set forth herein are drawn from the parties’ jointly filed Rule 9A(b)(5) Statement of Material Facts, and exhibit references are to the accompanying Joint Appendix.

 The actual cost of the footing’s construction to Fargo is disputed by the parties. Fargo contends that it is entitled to a credit of $400,000 for this construction, twice the assessment of Worcester’s project consultant. What is not disputed, however, is that the full contribution of $625,000 to be paid by Fargo to Worcester for construction of the Skywalk has not been paid. This non-payment of the remaining balance (whatever its precise amount may be) is central to Worcester’s opposition to Fargo’s motion for summary judgment, which is premised on the contention that such payment was a condition precedent to its commencement of the Skywalk’s construction.

 he Court will not treat separately with Worcester’s asserted defense of “commercial impracticability.” This defense is a creature of the Massachusetts Uniform Commercial Code, see G.L.c. 106, §2-615, and thus applies only to contracts for the sale of goods. It is, however, nearly identical to its common-law twin, and the SJC has instructed that case law thereunder may be looked to for guidance when addressing the cognate defense of frustration of purpose. See Chase Precast, 409 Mass, at 374-75.

 Under the LDDA Amendment, any money spent by Fargo to construct the footing required for the Skywalk is credited against the $625,000 owed to Worcester. Fargo contends that it is entitled to a credit of $400,000 for the footing’s construction, while Worcester's appraiser values the footing at just $200,000. For purposes of summary judgment as to liability, the precise balance owed on Fargo’s contribution is immaterial. However, at the forthcoming trial to determine remedy, the amount to be credited against the contribution and the outstanding balance will either be accounted for as a net offset reducing the damages recoverable by Fargo; or, if Worcester is ordered to make specific performance, Fargo will likewise be compelled to specifically perform this payment obligation.

 As noted ante, the evidence preponderates strongly to the conclusion that Fargo’s pretermitted payments were not breaches of contract at all, the developer’s obligations in this regard having been excused by Worcester’s own material breach of contract in failing to construct the Skywalk.